# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| JEFFREY HEITZENRATER, Individually and on Behalf of Himself and All Other Persons Similarly Situated, | : <br> : <br> : <br> : |
| Plaintiffs, | : |
| v. | : <br> : |
| OFFICEMAX, INCORPORATED and OFFICEMAX NORTH AMERICA, INC., | : <br> : <br> : |
| Defendants. | : |

Case No. 12-cv-900 (WMS) (LGF)

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR CONDITIONAL CERTIFICATION

Seth R. Lesser
Fran L. Rudich
Michael J. Palitz
Rachel E. Berlin
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200

Gregg I. Shavitz*
Susan H. Stern*
Keith M. Stern*
Paolo C. Meireles*
SHAVITZ LAW GROUP, P.A.
1515 South Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888

[Other Attorneys on Signature page]

***Attorneys for Plaintiffs***

*Admitted *Pro Hac Vice*

## TABLE OF CONTENTS

I. PROCEDURAL HISTORY AND PERTINENT FACTS .......................................... 1

A. The Nature of Plaintiffs' Legal Claims ............................................................. 1

B. Statement of Facts ............................................................................................. 2

C.      The Deposition Testimony of Defendants' Two Corporate Representatives, the Ten Deposed Plaintiffs, and the Documentary Evidence Demonstrate that Assistant Store Managers are Similarly Situated ............................................................................... 3

   1)    The Duties and Responsibilities Are The Same for All ASMs .................................... 3

   2)    OfficeMax Creates a Uniform Set of Training Materials for ASMs ............................. 8

   3)    OfficeMax Stores Operate Pursuant to the Same Corporately Derived Policies ........... 9

   4)    The Compensation Method and Classification is the Same for All ASMs .................. 11

II.  ARGUMENT ............................................................................................... 11

   A. Conditional Certification Under the FLSA ................................................. 11

   B. Plaintiffs' Burden is Minimal at the Notice Stage ...................................... 13

   C. Plaintiffs' FLSA Claims Should be Conditionally Certified ....................... 17

   D. The Court Should Compel Defendants to Produce ASMs' Contact Information ........ 22

CONCLUSION .................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alli v. Boston Market*, 2011 U.S. Dist. LEXIS 101530 (D. Conn. Sept. 8, 2011) ........................ 20

*Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484  (S.D.N.Y. 2009) ............ 19, 20, 23

*Aros v. United Rentals, Inc.*, 269 F.R.D. 176 (D. Conn. 2010) ..................................................... 20

*Ayers v. SGS Control Servs., Inc.,* 2004 U.S. Dist. LEXIS 25646 (S.D.N.Y. 2004). ................... 15

*Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335 (2d Cir. 1978) ............... 12

*Chowdhury v. Duane Reade, Inc.,* 2007 U.S. Dist. LEXIS 73853
    (S.D.N.Y. Oct. 2, 2007)………………………………………………………………………….16

*Craig v. Rite Aid Corp.*, 2009 U.S. Dist. LEXIS 114785 (M.D. Pa. Dec. 9, 2009) ..................... 18

*Creely v. HCR Manorcare*, 2011 U.S. Dist. LEXIS 61376 (N.D. Ohio June 9, 2011) ............... 20

*Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638 (S.D.N.Y. 2010) ........................... 14

*Damassia v. Duane Reade, Inc.*, 2006 U.S. Dist. LEXIS 73090
    (S.D.N.Y. Oct. 5, 2006). ...................................................................................... 14, 15, 20, 21

*Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152 (S.D.N.Y. 2008) ................................................. 9

*Fasanelli v. Heartland Brewery, Inc.,* 516 F. Supp. 2d 317 (S.D.N.Y. 2007) ............................. 14

*Ferreira v. Modell's Sporting Goods, Inc.,* 2012 U.S. Dist. LEXIS 100820
    (S.D.N.Y. July 16, 2012) .................................................................................................... 18, 22

*Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101 (S.D.N.Y. 2003) ............ 15, 17

*Goodman v. Burlington Coat Factory*, 2012 U.S. Dist. LEXIS 166910
    (D.N.J. Nov. 20, 2012) ........................................................................................................ 18, 21

*Gordon v. Kaleida Health,* 2009 U.S. Dist. LEXIS 95729  (W.D.N.Y. Oct. 14, 2009) ............... 14

*Gortat v. Capala Brothers, Inc.*, 2010 U.S. Dist. LEXIS 35451
    (E.D.N.Y. Apr. 9, 2010) ................................................................................................ 13, 14, 17

*Griffiths v. Fordham Financial Management,* 2013 U.S. Dist. LEXIS 72909
    (S.D.N.Y. May 22, 2013) ......................................................................................................... 19

*Guttentag v. Ruby Tuesday Inc*., 2013 U.S. Dist. LEXIS 82350
(S.D.N.Y. June 11, 2013)..................................................................... 14, 15

*Hallissey v. America Online, Inc.,* 2008 U.S. Dist. LEXIS 18387 (S.D.N.Y. Feb. 19, 2008)...... 16

*Hens v. Clientlogic Operating Corp.,* 2006 U.S. Dist. LEXIS 69021
(W.D.N.Y. Sept. 22, 2006) ...................................................... 13, 14, 15, 23

*Hinterberger v. Catholic Health System*, 2009 U.S. Dist. LEXIS 97944
(W.D.N.Y. Oct. 20, 2009)................................................... 12, 13, 14, 17, 23

*Hoffman v. Sbarro, Inc*., 982 F. Supp. 249 (S.D.N.Y. 1997) ......................... 12, 14, 15

*Hoffman-La Roche v. Sperling*, 493 U.S. 165 (1989)................................. 12, 13, 23

*Ibea v. Rite Aid Corp*., 2011 U.S. Dist. LEXIS 144652 (S.D.N.Y. Dec. 14, 2011) ............. 14, 21

*Ibea v. Rite Aid Corp.*, 2012 U.S. Dist. LEXIS 4682 (S.D.N.Y. Jan. 9, 2012) ........................... 14

*In re Penthouse Executive Club Comp. Litig.*, 2010 U.S. Dist. LEXIS 114743
(S.D.N.Y. Oct. 27, 2010) ....................................................................... 20

*In re Deloitte & Touche Overtime Litig*., 2011 U.S. Dist. LEXIS 144977
(S.D.N.Y. Dec. 16, 2011)……………………………………………………………23

*Indergit v. Rite Aid Corp.*, 2010 U.S. Dist. LEXIS 60202 (S.D.N.Y. June 15, 2010)...... 15, 18, 22

*Jacob v. Duane Reade, Inc.*, 2012 U.S. Dist. LEXIS 11053 (S.D.N.Y. Jan. 27, 2012) ... 15, 20, 21

*Masson v. Ecolab, Inc.,* 2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. Aug. 17, 2005) .................... 17

*Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008)............................... 13, 15

*Myers v. The Hertz Corp*., 624 F.3d 537 (2d Cir. 2010).................................... 1, 9, 12, 13, 14,  23

*Parks v. Dick's Sporting Goods, Inc.*, 2007 U.S. Dist. LEXIS 2094912
(W.D.N.Y. Mar. 21, 2007)................................................................ 16, 17, 18

*Patton v. Thomson Corp*., 364 F. Supp. 2d 263 (E.D.N.Y. 2005).............................. 23

*Prizmic v. Armour, Inc.,* 2006 U.S. Dist. LEXIS 42627 (E.D.N.Y. June 12, 2006).................... 16

*Raimundi v. Astellas US LLC*, 2011 U.S. Dist. LEXIS 124484 (S.D.N.Y. Oct. 27, 2011) ......... 20

*Raniere v. Citigroup, Inc.*, 2011 U.S. Dist. LEXIS 13539 (S.D.N.Y. Nov. 22, 2011 ........... 11, 23

*Ravenell v. Avis Budget Car Rental , LLC*, 2010 U.S. Dist. LEXIS 72563
(E.D.N.Y. July 19, 2010) ................................................................... 14, 21

*Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234  (N.D.N.Y. 2002) ........................ 23

*Rubery v. Buth-Na-Bodhaige, Inc.,* 569 F. Supp. 2d 334 (W.D.N.Y. 2008) .............. 13, 15, 16, 21

*Scholtisek v. The Eldre Corporation*, 229 F.R.D. 381 (W.D.N.Y. 2005)............. 11, 13, 14, 15, 17

*Sexton v. Franklin First Fin., Ltd.,* 2009 U.S. Dist. LEXIS 50526 (E.D.N.Y. June 16, 2009)....17

*Stillman v. Staples, Inc.,* 2008 U.S. Dist. LEXIS 32853 (D.N.J. Apr. 22, 2008) ................... 19, 21

*Stillman v. Staples, Inc.,* 2009 U.S. Dist. LEXIS 42247 (D.N.J. May 15, 2009) ........................ 19

*Winfield v. Citibank, N.A.*, 2012 U.S. Dist. LEXIS 16449 (S.D.N.Y. Jan. 27, 2012) ................. 19

*Youngblood v. Family Dollar Stores, Inc.*, 2011 U.S. Dist. LEXIS 115389
(S.D.N.Y. Oct. 4, 2011) .................................................................................. 9

*Zaniewski v. PRRC Inc.*, 848 F. Supp. 2d 213 (D. Conn. 2012)............................................ 18, 21

*Zivali v. AT&T Mobility LLC*, 646 F. Supp. 2d 658 (S.D.N.Y. 2009)......................................... 14

## Statutes and Rules

29 U.S.C. § 216(b) ............................................................................... *passim*

29 U.S.C. § 256(b) ................................................................................. 12, 14, 16, 23

Fed. R. Civ. P. 23 ................................................................................... 1, 11

Fed. R. Civ. P. 30(b)(6) ......................................................................... 2, 3, 18

## Other Authorities

Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 1807
(3d ed. 2005) ....................................................................................... 11

Plaintiff Jeffrey Heitzenrater, along with fifteen other Assistant Store Managers ("ASMs") who have joined this case from fourteen states as Opt-ins (collectively "Plaintiffs"), submit this memorandum in support of their Motion for Conditional Certification and Notice pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), on behalf of all ASMs employed by Defendants OfficeMax, Incorporated and OfficeMax North America, Inc., (collectively "OfficeMax") throughout the United States (except in California) who were classified as exempt employees at any time from September 21, 2009, to the present (the "Collective Action Period").  This Court should grant the motion for this archetypical FLSA collective action so that additional current and former ASMs can be notified of their right to participate in this lawsuit.  Such an Order would be in line with the overwhelming precedent in this Court and this Circuit granting conditional certification motions, including in retail misclassification cases, after a plaintiff has made a "modest factual showing" to meet the "lenient burden."  *Myers v. The Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010) ("*Hertz*").

## I.   PROCEDURAL HISTORY AND PERTINENT FACTS

### A.   *The Nature of Plaintiffs' Legal Claims*

On September 21, 2012, Plaintiff Jeffrey Heitzenrater filed a Complaint against OfficeMax in the Western District of New York, alleging violations of the FLSA and the New York Labor Law on behalf of himself and similarly situated employees pursuant to 29 U.S.C. § 216(b) and FED. R. CIV. P. 23.  *See* Complaint (ECF Doc. 1).  OfficeMax answered the complaint on October 25, 2012. *See* Answer (ECF Doc. 16).  Since then, 15 more individuals – who worked for OfficeMax in some 14 states[1] – have filed consents to opt-into this litigation pursuant

---

[1] The sixteen Plaintiffs presently before the Court worked as ASMs in OfficeMax retail stores located in fourteen different states:  Jeffrey Heitzenrater (New York), Jay Adkins (North Carolina), Mary Lisa Allen (Missouri), Robert Beall (Wisconsin), Craig Billner (Illinois), Steven

to 29 U.S.C. § 216(b).  Pursuant to Judge Foschio's February 4, 2013 Scheduling Order (ECF

Doc. 38), conditional certification discovery followed, which consisted of two Rule 30(b)(6)

depositions: the deposition of the named Plaintiff and nine of the opt-ins (whom OfficeMax

chose to be deposed), along with first-stage written discovery and document production.

**B.      Statement of Facts**

"OfficeMax is a leader in both business-to-business and retail office products

distribution. […] OfficeMax customers are served by more than 29,000 associates through direct

sales, catalogs, the Internet and more than 900 retail locations throughout the U.S."  OfficeMax

website, http://about.officemax.com/html/officemax_company_facts.shtml. The executives at

OfficeMax corporate headquarters direct the administrative and business functions for the entire

company, including, as specifically relevant to this motion, the classification of employees at

OfficeMax.[2]

The sixteen Plaintiffs are among the current and former employees who were employed

by OfficeMax as ASMs, all of whom were classified as exempt.  Plaintiffs allege that Defendants

violated the FLSA by willfully failing to pay them and other similarly situated ASMs overtime

pay for all hours worked in excess of 40 hours in a workweek.  *See* Complaint (ECF Doc. 1) at

¶¶ 1, 43-47, 64-67, 72.  OfficeMax admits that it failed to pay Plaintiffs and ASMs overtime, but

---

Bolt (Texas), Elizabeth Gebauer (Wisconsin), Ronald Kent (Florida and Alabama), Kim
Kesselhon (Wisconsin), David Petriga (Pennsylvania), Joshua Pfaff (Arizona), Jack Riley
(Massachusetts), Jennifer Schisler (Ohio), Terry Sebolt (Texas), Tracey Tobolksi (New York),
and Norman Vignola (Colorado).  Inasmuch as Steven Bolt joined this lawsuit on June 17, 2013,
after the close of fact discovery relating to conditional certification (May 15, 2013), Plaintiffs
will not be submitting a declaration from him.

[2] McMillan (Ex. A) at 46-47. Lesser Declaration deposition and declaration exhibits throughout
this motion will be cited by last name, exhibit number, and relevant page number (e.g. McMillan
(Ex. __) at ___").

claims that it is not required to do so because ASMs were "properly classified."  *See* Answer (ECF Doc. 16) at Paragraph 55.

      **C.**      ***The Deposition Testimony of Defendants' Two Corporate Representatives, the Ten Deposed Plaintiffs, and the Documentary Evidence Demonstrate that Assistant Store Managers are Similarly Situated***

           *1)*      *The Duties and Responsibilities Are The Same for All ASMs*

During one of the FED. R. CIV. P. 30(b)(6) depositions, OfficeMax's corporate representative, Mr. Herman Knox McMillan, admitted that all ASMs nationwide have the same primary duties "encapsulate[d]" in the corporation's job description. (McMillan (Ex. A) at 36-37). He confirmed that every ASM across the United States receives the same uniform job description outlining their essential job duties and responsibilities in all retail locations. (McMillan (Ex. A) at 37).  He further testified that the primary job duties of ASMs is the same regardless of:

- The location in which they worked;

- The size of the store in which they worked;

- The state in which they worked;

- The ASMs prior experience; and

- The Store Manager under which the ASM worked.

(McMillan (Ex. A) at 37-40).   Indeed, his testimony was so clear and complete that it alone supports Section 216(b) certification here:

Q:      And OfficeMax does not pay overtime to any Assistant Managers; correct?

A:      Because they're classified as exempt.  We pay consistent with the salary basis.

Q:      Okay. And that's the same throughout the country other than California?

A:      Correct.

3

Q:     And does OfficeMax give consideration to the size of a store where a particular Assistant Store Manager worked in determining whether an Assistant Manager is exempt?

A:     No.

Q:     Does OfficeMax take into account the volume, sales volume of the location in which an Assistant Manager worked in determining the exempt status of an Assistant Manager?

A:     **OfficeMax doesn't look at individual circumstances. […]**

Q:     Okay. And does OfficeMax take into account the shift or the hours that a particular Assistant Manager works in determining whether to classify them as exempt?

A:     No.

Q:     Does OfficeMax take into account the hours of operation of a particular location in determining whether to classify an Assistant Manager as exempt?

A:     No.

Q:     Does OfficeMax take into account a particular Assistant Manager's length of tenure within the company in determining whether to classify him or her as exempt?

A:     No.

Q.     Does OfficeMax ever take into account the geographic location where a particular Assistant Manager is assigned to work in determining whether to classify them as exempt?

A.     No.

Q.     Does OfficeMax take into account the hours of operations that -- in a particular location in determining whether or not to classify an Assistant Manager as exempt?

A.     No.

Q.     […] Does OfficeMax ever take into account an Assistant Manager's experience – previous experience in determining whether to classify them as exempt?

A.     No.

Q.      Does OfficeMax take into account the Supervisor or particular Assistant Manager is working under in determining whether to classify the Assistant Manager as exempt?

A.      Again, not in the decision on whether to classify […]

Q.      Does OfficeMax take into account the impact of competition in deciding whether to classify an Assistant Manager as exempt?

A.      No.

Q.      Does OfficeMax ever take into account the supervisor under which an Assistant Manager works in determining whether or not to classify them as exempt?

A.      No.

(McMillan (Ex. A) at 41-45, emphasis added).

Relatedly, OfficeMax disseminates the same uniform written job description that is developed by corporate headquarters for the ASM position.  (McMillan (Ex. A) at 18-20; Job Description attached as Exhibit B to Lesser Dec.).  Likewise, ASMs are evaluated using the same corporately derived criteria, regardless of location nationwide. (McMillan (Ex. A) at 74-77).  Indeed, in no manner is OfficeMax's blanket decision to classify ASMs as exempt an individualized one:

> When you're talking about the decision to classify an Assistant Manager. OfficeMax doesn't make individual decisions when a new Assistant Store Manager is hired or promoted on his or her status.

(McMillan (Ex. A) at 45-46). Additionally, while classifying all ASMs as exempt without considering any individual factors, OfficeMax never, at any time, conducted studies or formal audits to evaluate whether the Company's unvarying exemption classification is supported by the actual duties performed by ASMs.  (McMillan (Ex. A) at 47-48).

The deposition testimony of the ten Plaintiffs who OfficeMax deposed confirms the similarities of ASMs duties.  Although this is ultimately a merits point beyond the scope of the

present motion, it is not insignificant that the testimony of the ASM deponents confirms that they

spent the majority of their time doing the work of hourly employees.[3]  Kim  Kesselhon spent

95% percent of her time performing these hourly tasks (Kesselhon (Ex. C) at 294); Norman

Vignola spent 75% of his workday selling, stocking and unloading freight (Vignola (Ex. D) at

326, 333); Craig Billner spent 80% of his time on the floor selling products to customers (Billner

(Ex. E) at 313); and Elizabeth Gebauer explained that "at least 75 to 80 percent of the time [she]

was stuck doing hourly work." (Gebauer (Ex. F) at 306).  Jay Adkins felt like "a glorified hourly

associate," and likewise described:

> I mean, as far as basic tasking, non-management tasking, I'd say anywhere
> from 90 to 95 percent of my week was spent on the floor doing the
> standard thing, same things that I did as an hourly associate. […]
> Anywhere from receiving a truck, which could be done by our hourly
> associates, opening and closing the store, which could be done by an
> hourly associate, stocking the shelves, setting the planogram, helping our
> customers, which was the biggest – majority of the time that's what we
> were all there for was helping out customers.

(Adkins (Ex. G) at 20, 300; *see also* Riley (Ex. H) at 293-98, 302 (described spending 80% of

time on hourly duties including "doing planograms all day," "some days [worked] an entire shift

on price changes, eight to ten hours just changing prices," devoted "eight to ten hours per week

cleaning the store, a couple of hours getting shopping carts, four to five hours running the cash

---

[3] Even  Defendants' job description includes plainly non-exempt requirements and duties, such
as:

- "Ability to lift and/or move up to 50 pounds and climb ladders occasionally";
- "Ability to stand and move about for extended periods of time with only brief periods of
  sitting";
- "Provid[e] each customer best in class customer service"; and
-  "Complete all assigned tasks within specified timelines and company standards*."*

*See* Exhibit B.

register, stocked shelves on a daily basis, and spent "the bulk of [his] shift […] selling and assisting customers")).  The primary work to which they testified performing included:

- Engaging in customer service;[4]

- Stocking shelves and down-stocking the binder wall;[5]

- Operating the cash register;[6]

- Unloading trucks and freight;[7]

- Selling merchandise;[8]

- Setting up displays and planograms;[9]

---

[4] Heitzenrater (Ex. I) at 320; Gebauer (Ex. F) at 304; Riley (Ex. H) at 101-02, 153-54, 294; Adkins (Ex. G) at 71, 122-23, 182, 301; Vignola (Ex. D) at 151-52, 294, 304, 315-16; Petriga (Ex. J) at 53-54 184-86, 278; Kesselhon (Ex. C) at 160, 294; Kent (Ex. K) at 34, 67, 92, 150, 172, 220, 230, 232, 239, 242, 252; Billner (Ex. E) at 304-05, 321-22; Allen (Ex. L) at 155-56; Sebolt (Ex. M) at ¶ 4; Beall (Ex. N) at ¶ 3; Schisler (Ex. O) at ¶ 3.

[5] Heitzenrater (Ex. I) at 22-24, 38, 105, 166, 208, 225, 279; Gebauer (Ex. F) at 103, 138, 275, 304, 306; Riley (Ex. H) at 286-89; Adkins (Ex. G) at 78, 301-02; Vignola (Ex. D) at 321, 323, 326; Petriga (Ex. J) at 130; Kesselhon (Ex. C) at 166, 294; Kent. (Ex. K) at 34, 76, 120, 144, 150, 179, 220, 232, 296; Billner (Ex. E) at 241, 247, 321, 328, 331-32; Allen (Ex. L) at 49, 156; Tobolski (Ex. P) at ¶ 3; Sebolt (Ex. M) at ¶ 4; Pfaff (Ex. Q) at ¶ 3; Schisler (Ex. O) at ¶ 3.

[6] Heitzenrater (Ex. I) at 275; Gebauer (Ex. F) at 275, 304; Riley (Ex. H) at 239; Adkins (Ex. G) at 71; Vignola (Ex. D) at 313-15; Petriga (Ex. J) at 183-84, 278; Kent (Ex. K) at 67-68, 71, 243; Billner (Ex. E) at 310; Allen (Ex. L) at 256; Tobolski (Ex. P) at ¶ 3; Beall (Ex. N) at ¶ 3; Pfaff (Ex. Q) at ¶ 3; Schisler (Ex. O) at ¶ 3.

[7] Heitzenrater (Ex. I) at 164, 269; Gebauer (Ex. F) at 304; Riley (Ex. H) at 94, 285-86, 289-90; Adkins (Ex. G) at 301-02; Vignola (Ex. D) at 103, 326; Petriga (Ex. J) at 34, 42-43, 241; Kesselhon (Ex. C) at 294; Kent (Ex. K) at 144, 230, 239; Billner (Ex. E) at 84; Allen (Ex. L) at 156, 297-300; Tobolski (Ex. P) at ¶ 3;  Sebolt (Ex. M) at ¶ 4; Pfaff (Ex. Q) at ¶ 3.

[8] Heitzenrater (Ex. I) at 313-14; Gebauer (Ex. F) at 304-05; Vignola (Ex. D) at 294, 296, 304, 320, 326; Petriga (Ex. J) at 286; Kent (Ex. K)  at 34, 142, 147-48, 232, 296; Billner (Ex. E) at 313; Tobolski (Ex. P) at ¶ 3; Sebolt (Ex. M) at ¶ 4; Beall (Ex. N) at ¶ 3; Pfaff (Ex. Q) at ¶ 3; Schisler (Ex. O) at ¶ 3.

[9] Heitzenrater (Ex. I) at 23-24, 52, 105, 243-45; Gebauer (Ex. F) at 103, 168, 305; Riley (Ex. H) at 66, 94, 286-87, 290, 292, 303; Adkins (Ex. G) at 301-02; Vignola (Ex. D) at 323-24; Petriga (Ex. J) at 125, 130, 144-46; Kent (Ex. K) at 243, 246, 296, 322; Billner (Ex. E) at 214, 244-45, 249-50, 321; Allen (Ex. L) at 151, 156, 292; Tobolski (Ex. P) at ¶ 3; Sebolt (Ex. M) at ¶ 4; Beall (Ex. N) at ¶ 3; Pfaff (Ex. Q) at ¶ 3; Schisler (Ex. O) at ¶ 3.

- Counting inventory;[10]

- Cleaning the store;[11]

- Collecting shopping carts from the parking lot;[12] and

- Pricing and merchandise recovery.[13]

In sum, and although this will be a second-stage merits matter, Plaintiff Heitzenrater captured the sense of what this case is about when he testified that he felt like a "glorified stock boy" and a "robot" while he was employed by OfficeMax as an ASM. (Heitzenrater (Ex. I) at 257, 65).

### 2)   OfficeMax Creates a Uniform Set of Training Materials for ASMs

OfficeMax's 30(b)(6) representative testified that OfficeMax's corporate headquarters generates one set of management training materials for all ASMs nationwide. (Richardson (Ex. R) at 28-29; 36-38).[14] OfficeMax "uses a similar assessment process for all [ASMs]" before training commences. (Richardson (Ex. R) at 26). OfficeMax also trains all ASMs across the country using the same corporately derived "E-learning" training courses which are accessible to all ASMs on the OfficeMax store portal. (Richardson (Ex. R) at 33-34; 38). In keeping with this

---

[10] Heitzenrater (Ex. I) at 76; Riley (Ex. H) at 290; Adkins (Ex. G) at 303-04.

[11] Heitzenrater (Ex. I) at 181, 225; Gebauer (Ex. F) at 138, 305; Riley (Ex. H) at 158, 295; Adkins (Ex. G) at 78, 301; Petriga (Ex. J) at 130, 241, 266; Kesselhon (Ex. C) at 294; Kent. (Ex. K) at 34, 144, 150, 179, 220, 248; Tobolski (Ex. P) at ¶ 3; Sebolt (Ex. M) at ¶ 4; Pfaff (Ex. Q) at ¶ 3; Schisler (Ex. O) at ¶ 3.

[12] Gebauer (Ex. F) at 305-06; Riley (Ex. H) at 297; Adkins (Ex. G) at 303; Kesselhon (Ex. C) at 124; Tobolski (Ex. P) at ¶ 3; Sebolt (Ex. M) at ¶ 4; Beall (Ex. N) at ¶ 3; Pfaff (Ex. Q) at ¶ 3; Schisler (Ex. O) at ¶ 3.

[13] Heitzenrater (Ex. I) at 164, 225; Gebauer (Ex. F) at 305-06; Riley (Ex. H) at 297-99; Adkins (Ex. G) at 302-03; Billner (Ex. E) at 316; Allen (Ex. L) at 156, 300-01, 303-05; Tobolski (Ex. P) at ¶ 3; Sebolt (Ex. M) at ¶ 4; Pfaff (Ex. Q) at ¶ 3.

[14] From 2009 through July 2012, the training program for ASMs was entitled the "Field Management Training Program." (Richardson (Ex. R) at 29). In July 2012, the training program was re-named the "Retail Management Training Program." *Id*. at 28-29. A corporately derived document entitled the "Facilitators Guide" is used nationwide for the training of all ASMs. *Id*. at 30-31; 36-38.

corporate oversight, all ASMs are subject to the same corporately-derived annual performance review. (Richardson (Ex. R) at 73-74).

        3)     *OfficeMax Stores Operate Pursuant to the Same Corporately Derived Policies*

OfficeMax's corporate documents further show how ASMs are subject to (what then District Court Judge (now Circuit Court Judge) Lynch termed) "comprehensive corporate procedures and policies" as to which "the duties of the job are largely defined," *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 159 (S.D.N.Y. 2008), an analysis approvingly cited by the Second Circuit in *Hertz*. 624 F.3d 537.[15] Here, OfficeMax corporate headquarters created its "Associate Handbook" as a set of corporate rules and procedures that apply to all ASMs at OfficeMax. (Richardson (Ex. R) at 23). OfficeMax corporate headquarters likewise created a "Planogram Standard" which "is a document that is provided to the stores on the planograms and how they would set them in their particular store" and designed this standard to ensure consistency across its stores. (Richardson (Ex. R) at 49; *see also,* Planogram Standard, attached as Exhibit S to Lesser Dec.).  Further, is the "Store Activity Calendar," which is a "standard that outlines how [OfficeMax] communicate[s] tasks to our stores to be completed in the stores." (Richardson (Ex. R) at 52).  Corporate headquarters expects all stores to review the Store Activity Calendar and complete the tasks in their respective stores. The purpose of the Store

---

[15] Judge Lynch's observation in *Damassia* was made in the context of a Rule 23 motion for assistant store managers.  Beyond the point that the standard for granting a conditional certification motion under Section 216(b) is far lower that of a Rule 23 motion, it is not insignificant to note the many ways OfficeMax has the same set of "comprehensive corporate procedures and policies" that supported the Rule 23 class of assistant store managers against Duane Reade, and which are likewise present here. Inasmuch as this kind of evidence would support a Rule 23 motion (in fact, this was the very kind of evidence that Courts in this Circuit rely upon in certifying Rule 23 New York Labor Law retail chain store misclassification cases; *see, Damassia,* 250 F.R.D. at 160; *Youngblood v. Family Dollar Stores, Inc*., 2011 U.S. Dist. LEXIS 115389 (S.D.N.Y. Oct. 4, 2011) (certifying class of store managers)), it necessarily supports granting a first stage conditional certification motion here.

Activity Calendar is to "execute all activities consistently across the entire organization." (Richardson (Ex. R) at 53-54; Store Activity Calendar Standard, attached as Exhibit T to Lesser Dec.)[16]

OfficeMax corporate headquarters also sets a labor budget or "payroll" for each store. "Each store is provided a budget in the same fashion," and "store managers are expected to [stay within the labor budget]." (Richardson (Ex. R) at 71-72). Indeed, even footwear, hair, piercing, and tattoo requirements for all ASMs, as well as the type of shirts, pants, and name badge that all ASMs are required to wear, is dictated by OfficeMax corporate headquarters. (OfficeMax Retail Store Dress Code, attached as Exhibit U to Lesser Dec.). Not surprisingly, the testimony is also clear that Plaintiffs, like all ASMs, were required to follow OfficeMax's policies and were not asked to provide any input into those policies.[17]

---

[16] Yet other documents demonstrate the top-down corporate control of ASM jobs. *See, e.g.,* Exhibit B at 1-2 ("Ensure that the store operates in full compliance with […] company policies"; "Perform cash pulls […] in accordance with established policies"; "Maintain all necessary new hire paperwork to company standards"; "Live and promote OfficeMax Core Values, Brand Essence and Mission"). Not surprisingly, all OfficeMax stores follow the same corporate hierarchy:

> So we have Store Associates that report to the Store Manager. We have Sales Specialists --I'm sorry -- Sales Consultants that report to the Store Manager. We have Sales Consultants that report to the Store Manager. We have an Operations Supervisor that reports to the Store Manager. And we have the Assistant Store Manager that reports to the Store Manager. We have Impress Associates that report to the Impress Supervisor. And the Impress Supervisor reports to the Store Manager. And in the absence of the Store Managers, those positions would report to the Assistant Store Manager.

(Richardson (Ex. R) at 68-69). Not only do all store positions, including ASMs, report to the Store Manager, but Store Managers also report to the District Managers who are responsible for store management. *Id.* at 59, 64.

[17] Gebauer (Ex. F) at 307-09; Riley (Ex. H) at 309-10; Adkins (Ex. G) at 171, 212; Vignola (Ex. D) at 121-22, 187, 192, 231; Petriga (Ex. J) at 34-35, 82-83, 109-10, 195, 298-99; Kent (Ex. K) at 126-28, 322-23; Allen (Ex. L) at 224, 250; Heitznrater (Ex. I) at 23-24, 54-55, 58, 78, 146, 257, 320; Tobolski (Ex. P) at ¶ 5; Sebolt (Ex. M) at ¶ 3; Beall (Ex. N) at ¶ 4; Pfaff (Ex. Q) at ¶ 4;

4)    *The Compensation Method and Classification is the Same for All ASMs*

Finally, and no less importantly, all OfficeMax ASMs nationwide are paid on a salaried basis without overtime, are eligible for the same 401(k) plans, medical insurance, and are subject to the same holiday and vacation policies.  (Richardson (Ex. R) at 78-79; 82-87).  OfficeMax "derived [all ASMs] salary based on a 40-hour [per week] calculation." *Id.*  OfficeMax maintains a common corporate policy not to pay overtime to all ASMs outside of California for the hours they work in excess of 40 in a workweek, instead classifying all ASMs as exempt from the FLSA's overtime provisions while expecting ASMs to work overtime hours without any additional compensation.  (McMillan (Ex. A) at 41).

## II.    **ARGUMENT**

### A.    *Conditional Certification Under the FLSA*

Plaintiffs bring this collective action on behalf of themselves and other ASMs pursuant to FLSA Section 16(b), which allows private civil actions to be maintained "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).  "FLSA actions are, consequently, not true representative actions as under Rule 23, but instead those actions brought about by individual employees who affirmatively join a single suit." *Raniere v. Citigroup, Inc.*, 2011 U.S. Dist. LEXIS 13539, at *45-46 (S.D.N.Y. Nov. 22, 2011); *accord, Scholtisek v. The Eldre Corporation*, 229 F.R.D. 381, 386 (W.D.N.Y. 2005).  Thus, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b); ARTHUR R. MILLER & MARY K. KANE, FEDERAL

---

Schisler (Ex. O) at ¶; *see also* Gebauer (Ex. F) at 123 ("OfficeMax came up with this concept that all the stores had to be the same. Everything had to be the same […]"); Riley (Ex. H) at 139-40 ("[OfficeMax] had a specific way they wanted product to be organized.").

PRACTICE AND PROCEDURE § 1807, 468-69 (3d ed. 2005); *Hinterberger v. Catholic Health System*, 2009 U.S. Dist. LEXIS 97944, at *11 (W.D.N.Y. Oct. 20, 2009) (Skretny, *J.*).

As observed by the Supreme Court, the benefits of a Section 216(b) collective action provide plaintiffs with "the advantage of lower individual costs to vindicate rights by the pooling of resources," *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 170 (1989), and further the FLSA's "broad remedial purpose." *Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335, 336 (2d Cir. 1978) *accord Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 262-63 (S.D.N.Y. 1997) (Sotomayor, *J.*).  District Courts have "a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffman-La Roche* at 170-171.  Consistent with this managerial responsibility, District Courts often facilitate the notice and joinder process by "conditionally certifying" the lawsuit, thereby enabling other current and former employees to be notified of its existence. *See, e.g., Hertz*, 624 F.3d at 554; *Hinterberger*, 2009 U.S. Dist. LEXIS 97944 (Skretny, *J.*).

Unlike Rule 23 class actions, the commencement of a FLSA collective action under Section 216(b) does not toll the running of the applicable statute of limitations period for the putative class members.  *See* 29 U.S.C. § 256(b).  As such, time is of the essence for the potential opt-ins.  As explained by the United States Supreme Court:

> Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some time later.
> ***
> The court is not limited to waiting passively for objections about the manner in which the consents were obtained.  By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative.  Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed.

*Hoffman-La Roche*, 493 U.S. at 171-72 (internal citations omitted); *see also, Gortat v. Capala Brothers, Inc.*, 2010 U.S. Dist. LEXIS 35451, at *30 (E.D.N.Y. Apr. 9, 2010) ("early certification and notice are favored in order to protect plaintiffs' rights").

In *Myers v. Hertz Corp.*, the Second Circuit adopted a two-staged process for FLSA collective actions. 624 F.3d at 554-55; *accord, e.g., Hinterberger,* 2009 U.S. Dist. LEXIS 97944, at *12 (pre-Myers decision applying essentially same process); *Scholtisek,* 229 F.R.D. 381 (same). "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id.* at 555 (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258-62 (11th Cir. 2008)); *Hinterberger*, 2009 U.S. Dist. LEXIS 97944, at *13; *Hens v. Clientlogic Operating Corp.,* 2006 U.S. Dist. LEXIS 69021, at *10 (W.D.N.Y. Sept. 22, 2006) (Skretny, *J.*).

### B.     *Plaintiffs' Burden is Minimal at the Notice Stage*

The evidentiary standard for the first step of deciding whether to authorize notice under 29 U.S.C. § 216(b) is "lenient," and "the plaintiffs need make only a 'modest factual showing' that they and the other putative collective action members 'together were victims of a common policy or plan that violated the law.'" *Hinterberger*, 2009 U.S. Dist. LEXIS 97944, at *13 (Skretny, *J.)* (citing *Rubery v. Buth-Na-Bodhaige, Inc.,* 569 F. Supp. 2d 334, 366 (W.D.N.Y. 2008)).   The burden at this stage is minimal because "determination that potential plaintiffs are similarly situated is merely a preliminary one." *Scholtisek,* 229 F.R.D. at 387; *Hinterberger,* 2009 U.S. Dist. LEXIS 97944, at *13.   The first stage is not the appropriate time to undertake the more detailed second stage analysis of determining whether the lawsuit ultimately will proceed as a § 216(b) collective action, and at this preliminary stage, courts in this Circuit "typically

grant conditional certification." *Guttentag v. Ruby Tuesday Inc*., 2013 U.S. Dist. LEXIS 82350,

*9 (S.D.N.Y. June 11, 2013); *Ravenell v. Avis Budget Car Rental, LLC*, 2010 U.S. Dist. LEXIS

72563, at *5 (E.D.N.Y. July 19, 2010); *Zivali v. AT&T Mobility LLC*, 646 F. Supp. 2d 658, 661-

62 (S.D.N.Y. 2009); *Cunningham v. Elec. Data Sys. Corp*., 754 F. Supp. 2d 638, 643-44

(S.D.N.Y. 2010); *Ibea v. Rite Aid Corp*., 2011 U.S. Dist. LEXIS 144652 (S.D.N.Y. Dec. 14,

2011), *aff'd,* 2012 U.S. Dist. LEXIS 4682 (S.D.N.Y. Jan. 9, 2012); *Gortat*, 2010 U.S. Dist.

LEXIS 35451, at *30.  "At the second stage, the district court will, on a fuller record, determine

whether a so-called collective action may go forward by determining whether the plaintiffs who

have opted in are in fact similarly situated to the named plaintiffs." *Hertz*, 624 F.3d at 555;

*Gordon v. Kaleida Health,* 2009 U.S. Dist. LEXIS 95729 at *14 (W.D.N.Y. Oct. 14, 2009)

(effectively same enunciation of standard, pre-*Myers*) (Skretny, *J.*).

At the first stage, "[t]he burden on plaintiff is not a stringent one, and the Court need only

reach a preliminary determination that plaintiffs are similarly situated." *Sbarro*, 982 F. Supp. at

261; *see also, Hens*, 2006 U.S. Dist. LEXIS 69021, at *10; *Hinterberger*, 2009 U.S. Dist. LEXIS

97944, at *14; *Scholtisek*, 229 F.R.D. at 387; *Fasanelli v. Heartland Brewery, Inc.,* 516 F. Supp.

2d 317, 321 (S.D.N.Y. 2007).  "Similarly situated" at the first stage does not mean (as defendants

often try to argue) effective identicality as to the merits of the alleged FLSA violation, but rather

only that plaintiff need show a "uniform business practice." *Damassia,* 2006 U.S. Dist. LEXIS

73090, *18.  The Second Circuit explained in *Myers v. Hertz*:

> In a FLSA exemption case, plaintiffs accomplish [showing a common policy or
> plan that violated the law] by making some showing that "there are other
> employees . . . who are similarly situated with respect to their job requirements
> and with regard to their pay provisions," on which the criteria for many FLSA
> exemptions are based, who are classified as exempt pursuant to a common policy
> or scheme.

624 F.3d at 556 (citing *Morgan*, 551 F.3d at 1259).  The merits of the claim – i.e., namely, that

OfficeMax's classification is wrong because the putative collective action members do not

perform sufficient managerial work – is a determination that is not before this Court:  "At this

juncture, this Court 'need not evaluate the merits of plaintiffs' claims in order to determine that a

definable group of 'similarly situated' plaintiffs can exist here.'  The ultimate determination

regarding the merits of the case, and whether the class is properly situated - which requires a

more 'stringent' inquiry - is made later in the litigation process, after more thorough discovery."

*Hens*, 2006 U.S. Dist. LEXIS 69021, at *14-15 (quoting *Sbarro*, 982 F. Supp. at 262; other

citations omitted); *accord, e.g., Damassia*, 2006 U.S. Dist. LEXIS 73090, at *15 (writing, in

misclassification case, "In opposing court-authorized notice, defendant dedicates a substantial

portion of its briefs to the misplaced argument that plaintiffs' claims fail on the merits. . . .

[C]ourts need not resolve the merits in order to find plaintiffs and potential opt-in plaintiffs

similarly situated for purposes of authorizing notice.") (citing *Scholtisek*, 229 F.R.D. at 391;

*Guttentag v. Ruby Tuesday Inc.*, 2013 U.S. Dist. LEXIS, at *5; *Gjurovich v. Emmanuel's

Marketplace, Inc.*, 282 F. Supp. 2d 101, 105 (S.D.N.Y. 2003); *Sbarro*, 982 F. Supp. at 262));

*Indergit v. Rite Aid Corp.*, 2010 U.S. Dist. LEXIS 60202, at *25-26 (S.D.N.Y. June 15, 2010)

(same; quoting *id.*);[18] *Jacob v. Duane Reade, Inc.*, 2012 U.S. Dist. LEXIS 11053 (S.D.N.Y. Jan.

---

[18] Judge Larrimer stated the matter well in his much-cited, including by this Court, *Rubery*
decision which also involved multistate retail store manager misclassification claims (as well as
off-the-clock claims) and which is worth quoting at length:

> At this juncture, however, plaintiff need not conclusively demonstrate that she
> and the other putative class members are, in fact, similarly situated. Rather, she
> must show that she "and potential plaintiffs together were victims of a common
> policy or plan that violated the law. *Ayers v. SGS Control Servs., Inc.,* 2004 U.S.
> Dist. LEXIS 25646 at *4 (S.D.N.Y. 2004). *See also, Scholtisek, 229 F.R.D. 381,*
> 2005 U.S. Dist. LEXIS 14957 at *22 ("[w]hat *is* important is that these employees
> were allegedly subject to a common practice or scheme on [their employer's]

27, 2012) (writing, in conditionally certifying a retail store assistant manager case, "before the

Court is not whether Plaintiffs and other ASMs were identical in all respects, but rather whether

they were subjected to a common policy to deprive them of overtime pay when they worked

more than 40 hours per week.") (quotation omitted).

Judge Glasser has trenchantly explained why the standard at the first stage is low:

> Because the statute of limitations for FLSA claims continues to run for each
> individual plaintiff until he or she opts in, *see* 29 U.S.C. § 216(b), early
> certification and notice are favored in order to protect plaintiffs' rights. Thus,
> only a minimal evidentiary burden is imposed in order to satisfy the "similarly
> situated" requirement . . . . The heightened scrutiny standard is only appropriate

---

> part"). Morever, notwithstanding the substantial class discovery that has taken
> place, "it would be inappropriate . . . to require plaintiff to meet a more stringent
> standard than that typically applied at the early stages of litigation' before
> discovery is complete. *Chowdhury v. Duane Reade, Inc.,* 2007 U.S. Dist. LEXIS
> 73853 at * 10-* 11 (S.D.N.Y. 2007), citing *Prizmic v. Armour, Inc.,* 2006 U.S.
> Dist. LEXIS 42627 (E.D.N.Y. 2006) ("[o]nly after discovery has been completed
> should the Court engage in a second more heightened stage of scrutiny").
>
> I find that plaintiff has met her burden to demonstrate, by producing affidavits and
> time records from other Shop Managers which are indicative of a common policy
> or plan with respect to the duties and supervisory responsibilities of Shop
> Managers. While there will undoubtedly prove to be variances among the putative
> class members concerning their duration of employment, the extent to which they
> performed non-managerial functions, and the percentage of time, if any, that they
> supervised fewer than eighty subordinate hours per week, plaintiff's fundamental
> allegation is that defendant denied overtime wages to a number of Shop
> Managers, by classifying them as exempt even though their duties and
> supervisory responsibilities fell short of the requirements of the FLSA's executive
> exemption. As such, the class members are "similarly situated *with respect to
> their allegations* that the law has been violated," and preliminary certification is
> appropriate. *Hallissey v. America Online, Inc.,* 2008 U.S. Dist. LEXIS 18387 at
> *6 (S.D.N.Y. 2008) (emphasis added). *See also Parks v. Dick's Sporting Goods,
> Inc.,* 2007 U.S. Dist. LEXIS 20949 at *9-*10 (although similarity considerations
> might prove dispositive on a "second stage" analysis, evidence of discrepancies
> between putative class members is insufficient to defeat FLSA certification at the
> initial stage, due to plaintiff's "relatively lenient" burden to demonstrate that the
> class members were together subjected to the same wage and hour practices, for
> which she may rely on "substantial allegations" of such practices).

*Rubery*, 569 F. Supp. 2d at 337.

> after the opt-in period has ended and the court is able to examine whether the *actual* plaintiffs brought into the case are similarly situated.  It would not sensibly serve the purposes of a two-step scheme to impose on plaintiffs a heightened burden of proving that as-yet-unknown plaintiffs are similarly situated.

*Gortat,* 2010 U.S. Dist. LEXIS 35451, at *30, *35 (emphasis in original); *see also, e.g.,*

*Hinterberger*, 2009 U.S. Dist. LEXIS 97944, at *30 (Skretny, *J.*) ("It is well settled that [the

existence of certain individuals claims or defenses] does not require an individualized inquiry at

this preliminary stage")(citing *Sexton v. Franklin First Fin., Ltd.,*, 2009 U.S. Dist. LEXIS 50526,

at *28-29) (E.D.N.Y. June 16, 2009);  *Parks v. Dick's Sporting Goods, Inc.*, 2007 U.S. Dist.

LEXIS 20949, at *12 (W.D.N.Y. Mar. 21, 2007) (court declined to apply fact-specific inquiry

into job duties or other potentially distinguishing circumstances at conditional certification

stage); *Gjurovich*, 282 F. Supp. 2d 101, 105 ("Should it become clear later that the parties who

have opted-in are not similarly situated to the Plaintiff here, I will make any rulings that are

necessary and appropriate to ensure that the case is properly formed.").

Once the court determines that potential class members are similarly situated, it

"conditionally certifies" the collective action and authorizes notice to potential collective-action

members, who may "opt-in" under Section 216(b) by filing written consents.  The action then

"proceeds as a representative action throughout [merits] discovery." *Scholtisek*, 229 F.R.D. 381,

387; *Masson v. Ecolab, Inc.,* 2005 U.S. Dist. LEXIS 18022, at *39 (S.D.N.Y. Aug. 17, 2005).

### C.   *Plaintiffs' FLSA Claims Should be Conditionally Certified*

This Court should conditionally certify Plaintiffs' FLSA claims. The evidence here – not

only from Rule 30(b)(6) admissions, evidence from 15 plaintiffs[19] from 14 different states, as

well as corporate documents – is substantially more than in most FLSA collective actions,

---

[19] Although there are 16 Plaintiffs, Plaintiffs will not be submitting any evidence from Steven Bolt. *See* Footnote 1 above.

particularly retail chain store manager misclassification cases, including large multistate and national cases, which have been conditionally certified, particularly within this Circuit, but as well as elsewhere. *See, Ferreira v. Modell's Sporting Goods, Inc.,* 2012 U.S. Dist. LEXIS 100820 (S.D.N.Y. July 16, 2012) (granting conditional certification in a similar multistate assistant store manager misclassification case with deposition testimony from one plaintiff, several signed declarations from ASMs, and documentary evidence of uniform exemption policies); *Zaniewski v. PRRC Inc*., 848 F. Supp. 2d 213, 228 (D. Conn. 2012) (approving five state assistant Price Rite store manager conditional certification and notice based upon five declarations (no depositions), one Rule 30(b)(6) deposition and corporate documents); *Indergit*, 2010 U.S. Dist. LEXIS 60202 (approving Section 216(b) notice to 8,400 nationwide (except California) Rite Aid store managers based upon three affidavits and corporate documents, including a "Store Management Guide" and a job description); *Parks*, 2007 U.S. Dist. LEXIS 20949 (affirming Magistrate Judge Feldman's conditional certification of 35-state, 275 store collective action of "Golf Pros" (as here, the level below store manager) based upon affidavits from five employees from five states, a job posting and an organizational chart) (Siragusa, *J.*); *see also, e.g., Goodman v. Burlington Coat Factory*, 2012 U.S. Dist. LEXIS 166910 (D.N.J. Nov. 20, 2012) (certifying 44-state (465 store) Burlington Coat assistant store managers collective action based upon a single Rule 30(b)(6) deposition, three plaintiff and opt-in depositions, two declarations and corporate documents akin to those here); *Craig v. Rite Aid Corp.*, 2009 U.S. Dist. LEXIS 114785 (M.D. Pa. Dec. 9, 2009) (conditional certification for nationwide FLSA collective action of more than 8,000 Rite Aid assistant store managers, except those in California, based on plaintiff's pleadings, uniform job advertisements and the affidavits (no depositions) from assistant store managers from eight states).

18

Each of the forms and quantum of evidence present here – the deposition testimony of ten Plaintiffs combined with the declarations from an additional five Plaintiffs, who worked in fourteen states; the admissions of OfficeMax's corporate designated witnesses in their two depositions, and the corporate documents set out above – alone would support the relief sought and suffice to meet Plaintiffs' "lenient" burden of "some evidence."  Taken together, there can be no reasonable question to the contrary.  Indeed, it was upon almost an identical showing (with albeit fewer corporate documents) in *Stillman v. Staples, Inc.,* 2008 U.S. Dist. LEXIS 32853 (D.N.J. Apr. 22, 2008), that Judge Katherine Hayden conditionally certified a nationwide collective action (except California) against OfficeMax's largest competitor for its assistant store managers, a decision that ultimately led to collective action trial and a verdict in favor of the Staples assistant store managers who joined the case.  *See id.* (certifying conditional collective action and notice based upon 15 Plaintiff, opt-in and corporate depositions and declarations); *see also, Stillman v. Staples, Inc.,* 2009 U.S. Dist. LEXIS 42247 (D.N.J. May 15, 2009) (decision denying JNOV motions following collective action trial).[20]

As here, once a plaintiff has met his burden, courts have refused to consider a defendant's argument that differences exist among the class of employees.  *See Griffiths v. Fordham Financial Management,* 2013 U.S. Dist. LEXIS 72909, *8 (S.D.N.Y. May 22, 2013) (discounting defendant's contravening evidence); *Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484, 488 (S.D.N.Y. 2009) (defendants' contradictory affidavits were insufficient "to prevent Plaintiffs from meeting their 'minimal' burden of a 'modest factual showing' on its motion for conditional certification under FLSA."); *Winfield v. Citibank, N.A.*, 2012 U.S. Dist. LEXIS 16449, at *25 n.6 (S.D.N.Y. Jan. 27, 2012) ("courts in this Circuit regularly conclude that

---

[20] The Klafter Olsen & Lesser firm was co-lead counsel in the *Staples* litigation (and in a number of the other cases cited herein).

[defendant's] declarations do not undermine the plaintiffs' showing in the first stage of the conditional certification process."); *Jacob v. Duane Reade*, supra, 2012 U.S. Dist. LEXIS 11053 at *22 ("In an attempt to demonstrate the diversity of ASMs' job functions, Defendants have submitted deposition testimony and declarations from current employees. The Court, however, declines to weigh Plaintiffs' and Defendants' competing testimony at this phase of the litigation.") (citation omitted); *see also*, *e.g.*, *In re Penthouse Executive Club Comp. Litig.*, 2010 U.S. Dist. LEXIS 114743, at *12 (S.D.N.Y. Oct. 27, 2010) (defendants' submission of competing affidavits "amounts to a premature request to make credibility determinations and factual findings, something that is inappropriate at the notice stage."); *Aros v. United Rentals, Inc.*, 269 F.R.D. 176, 179 (D. Conn. 2010) (refusing to consider defendant's declarations); *Alli v. Boston Market*, 2011 U.S. Dist. LEXIS 101530 (D. Conn. Sept. 8, 2011) (same); *Creely v. HCR Manorcare*, 2011 U.S. Dist. LEXIS 61376, at *62-63 (N.D. Ohio June 9, 2011) (dismissing 35 "happy camper" declarations submitted by defendant as "of little use" on a Section 216(b) motion); *Raimundi v. Astellas US LLC*, 2011 U.S. Dist. LEXIS 124484, at *2-3 (S.D.N.Y. Oct. 27, 2011) (variations among collective action members not relevant at first-stage).

In short, Plaintiffs have plainly met the *Hertz* requirements of showing "some" evidence of similar job requirements and pay provisions for a misclassification claim – indeed, far from showing "some" evidence, there is substantial such evidence presented and in several different forms.  Except in California, ASMs at OfficeMax are governed by the same set of designated job duties and responsibilities, are compensated in the same manner, are classified as exempt from the FLSA's overtime provisions, and are subject to the same job description, corporate policies and work rules.  OfficeMax has a "uniform business practice" of treating ASMs similarly throughout the United States.  *See* page 3-11 above (citing, *inter alia*, *Damassia*, 2006 U.S. Dist.

LEXIS 73090 at *18).  As shown (page 11, above), OfficeMax has an admitted uniform and

common policy not to pay overtime to ASMs.  Just as in the *Duane Reade* cases (those decided

by both Judges Lynch and Oetken), the *Rite Aid* cases (both the two within this Circuit as well as

the case in Pennsylvania), the *Dick's* case, the *Rubery* case (which involved Body Shop

managers), the *Modell's* case, the *PRRC* (Price Rite) case, the *Burlington Coat* case, the *Staples*

case, etc., cited above, Section 216(b) certification and notice for the assistant store manager

FLSA misclassification claim is proper here.

Further, and while many of the Section 216(b) decisions in this Court look largely to

declarations and affidavits, here, not only is there evidence adduced from the lengthy depositions

of ten Plaintiffs (being subject to cross-examination can be more "reliable" than declarations, as

Judge Lynch, for one, has noted, *see, Damassia*, 250 F.R.D. at 160) but this motion is also

supported by OfficeMax's own corporate documents.  As Judge Haight wrote in conditionally

certifying another ASM collective action last year:

> [U]niform PriceRite corporate policy details employees' job duties; the same
> detailed job description is given to each ASM which each ASM is required to
> follow; corporate efforts are made to ensure that ASMs' jobs are uniform and
> consistent from store to store and state to state; the ASM position has not changed
> in 17 years; there is only one ASM job description and one set of duties for all
> PriceRite stores; those job descriptions are provided to ASMs to instruct them as
> to their duties; and all ASMs, for all stores and in all states, are trained in the
> same way through methods supervised by the same individual.
>
> Employers' use of practices such as these appear with regularity throughout the
> cited cases.  They make good business sense.  The Court is not critical of them.
> However, when such practices respecting a particular group of employees are
> coupled with the employer's uniform classification of all members of that group
> as 'exempt,' the conclusion is compelled that the employees are 'similarly
> situated' for purposes of an FLSA action challenging the validity of the
> exemption.

*Zaniewski*, 848 F. Supp. 2d at 228 (also summarizing other recent Second Circuit district court

misclassification certifications); *Ravenell*, 2010 U.S. Dist. LEXIS 72563, at *11-12 (certifying

nationwide collective action of Avis shift supervisors (akin to assistant store managers); "Plaintiffs' argument is buttressed by Avis's own corporate documents, which reveal that all Avis shift managers, wherever located, were treated as part of a category of similarly situated employees"); *Indergit*, 2010 U.S. Dist. LEXIS 60202, at *36 (the plaintiff, like here, "has cited corporate documents indicating that store managers had similar duties, that decisions regarding the content of their job descriptions and their classification as exempt from the FLSA were made at the national corporate level, and that [the employer] maintained a high degree of control over its store managers' daily tasks through nationwide corporate policies and procedures."); *Ferreira,* 2012 U.S. Dist. LEXIS 100820, at *8  (plaintiff's testimony and uniform corporate policies show that "the job descriptions for Assistant Managers demand the performance of nonexempt duties").

Based on the foregoing, this Court should authorize court-supervised notice because the evidence adduced demonstrates that Defendants have a uniform policy and practice not to pay their ASMs an overtime premium for hours worked over 40 in a workweek.  Accordingly, a collective action, at least for notice purposes, is the most appropriate way to address the legality of OfficeMax's common policy not to pay overtime to ASMs nationwide (except in California).

### D.        *The Court Should Compel Defendants to Produce ASMs' Contact Information*

Should the Court grant Plaintiffs' Motion, Plaintiffs will undertake to meet and confer with Defendants on the form of notice to be sent and how it is to be disseminated.  In order for Plaintiffs to provide similarly situated ASMs with notice of the action as contemplated by the law and routinely done by courts, Plaintiffs request that Defendants be ordered to produce the following within 21 days of its Order:

> A list, in electronic format, of all persons employed by Defendant as Assistant Store Managers at any time from September 21, 2009, to the present including:

names, addresses, telephone numbers, dates of employment, locations of employment, and work and personal e-mail addresses.

*See e.g., Hoffman-La Roche*, 493 U.S. at 170; *Hertz* 624 F.3d at 555; *Hinterberger*, 2009 U.S. Dist. LEXIS 97944, at *32; *Hens*, 2006 U.S. Dist. LEXIS 69021, at *16; *Alonso*, 648 F. Supp. 2d 484, 489-90; *Raniere*, 2011 U.S. Dist. LEXIS 13539, at *86-90; *In re Deloitte & Touche Overtime Litig.*, 2011 U.S. Dist. LEXIS 144977, at *4-5 (S.D.N.Y. Dec. 16, 2011); *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 266 (E.D.N.Y. 2005); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 241 (N.D.N.Y. 2002).

## <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs respectfully submit that the Court should grant this Motion, pursuant to 29 U.S.C. § 216(b), so that additional ASMs can be promptly notified of their right to participate in this lawsuit.

Dated:  June 28, 2013
     Rye Brook, New York

By: _____
     Seth R. Lesser
Fran L. Rudich
Michael J. Palitz
Rachel E. Berlin
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200

Gregg I. Schavitz*
Susan H. Stern*
Keith M. Stern*
Paolo C. Meireles*
SHAVITZ LAW GROUP, P.A.
1515 South Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888

23

Todd M. Schneider**
Carolyn H. Cottrell**
SCHNEIDER    WALLACE    COTTRELL
KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Telephone: (415) 421-7100

**Attorneys for the Plaintiffs**

*Admitted *Pro Hac Vice*
** *Pro Hac Vice* admission to be filed