UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JEFFREY HEITZENRATER, Individually and on
behalf of Himself and All Other Persons
Similarly Situated,

                              Plaintiff,

v.                                          **DECISION AND ORDER**
                                                     12-CV-900S

OFFICEMAX, INCORPORATED and
OFFICEMAX NORTH AMERICA, INC.,

                              Defendants.

## I. INTRODUCTION

Plaintiff commenced this action under the Fair Labor Standards Act (29 U.S.C. § 201 *et seq.* ("FLSA")) and New York Labor Law ("NYLL") alleging that Defendants failed to pay him and similarly situated assistant store managers overtime wages for hours worked in excess of 40 per week as required by law. Presently before this Court is Plaintiff's motion for conditional certification of this lawsuit as a FLSA collective action and to facilitate notice of the same under 29 U.S.C. § 216(b). The Court finds the motion fully briefed and oral argument unnecessary. For the reasons that follow, Plaintiff's motion is granted.

## II. BACKGROUND

Plaintiff worked as an Assistant Store Manager ("ASM") from January 2, 2011 to October 1, 2011 in Defendants' Batavia, New York store. (Compl ¶ 8, Docket No. 1.)

Plaintiff asserts that, in this position, his primary assigned duties included customer service, stocking shelves, working the cash register, unloading trucks, setting up displays pursuant to diagrams (referred to as planograms), counting inventory, cleaning the store, working in the copy center, pricing merchandise, collecting shopping carts in the parking lot, merchandise recovery and organizing shelves. (Compl ¶¶ 40, 49.) His primary duties did not include managerial tasks such as hiring, firing, scheduling, or disciplining employees. (Id. ¶ 50.) Plaintiff alleges that Defendants nonetheless willfully misclassified himself and other ASMs as exempt from the provisions of FLSA and the NYLL that require the payment of overtime rates for hours worked in excess of 40 per week. (Id. ¶¶ 41-43.)

Plaintiff commenced this action in September 2012 alleging violations of FLSA and NYLL on behalf of himself and all other current and former similarly situated ASMs. Since that time, seventeen additional ASMs have opted into the FLSA collective action pursuant to 29 U.S.C. § 216(b). Plaintiff now moves for conditional certification of this action with respect to all current and former ASMs employed by Defendants in the United States, with the exception of those in California,[1] at any time from September 21, 2009 to present. (Docket No. 55.)

### III. DISCUSSION

29 U.S.C. § 216(b) provides that an employee or employees suing for relief from an employer's FLSA violation may by brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." Unlike a class

---

[1] It appears that California ASMs are subject to a different job description by Defendants. (See McMillan Dep at 18-19, Docket No. 57.)

action under Rule 23 of the Federal Rules of Civil Procedure, a FLSA collective action requires potential class members to affirmatively opt into the case by way of a writing filed with the court. See 29 U.S.C. § 216(b); Myers v. Hertz Corp., 624 F.3d 537, 555 n. 10 (2d Cir. 2010), *cert denied*, 132 S. Ct. 368 (2011); Jenkins v. TJX Companies, 853 F. Supp. 2d 317, 320 (E.D.N.Y. 2012). A FLSA collective action also need not meet Rule 23's strict requirements of numerosity, typicality, commonality and representativeness. Jenkins, 853 F. Supp. 2d at 320. Indeed, nothing in FLSA in fact requires certification, it is instead a recognized case management tool for district courts to employ in appropriate cases to facilitate the sending of notice to potential class members. Myers, 624 F.3d at 555 n. 10 (citing Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169, 174, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)).

The determination whether a putative collective action is an appropriate case for this discretionary certification requires a two-step analysis. The first step, called conditional certification, "involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." Myers, 624 F.3d at 554-55; Jenkins, 853 F. Supp. 2d at 320. "Once a court conditionally certifies a collective action, it may then facilitate notice to all of the putative class members by approving a notice form." Jenkins, 853 F. Supp. 2d at 320. The second step generally occurs after discovery on the merits is completed, at which time a defendant may move to challenge certification. Jenkins, 853 F. Supp. 2d at 320-21. The district court can then "determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." Myers, 624 F.3d at 555; Jenkins, 853

F. Supp. 2d at 320. "The action may be de-certified if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." Myers, 624 F.3d at 555; Jenkins, 853 F. Supp. 2d at 320-21.

Plaintiff's motion implicates only the first step: conditional certification. At this stage, a plaintiff need present only "a 'modest factual showing' that [he or she] and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.' " Myers, 624 F.3d at 555 (quoting Hoffmann v. Sbarro, Inc., 982 F.Supp. 249, 261 (S.D.N.Y. 1997)). The burden is therefore minimal, "especially since the determination that potential plaintiffs are similarly situated is merely a preliminary one." Scholtisek v. Eldre Corp., 229 F.R.D. 381, 387 (W.D.N.Y. 2005) (quoting Gjurovich v. Emmanuel's Marketplace, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003) (internal quotation marks and citation omitted)). Nonetheless, a court must still find " 'some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims' of a particular practice." Jenkins, 853 F. Supp. 2d at 322 (quoting Sbarro, 982 F. Supp. at 261).

Here, Plaintiff alleges that Defendants failed to pay him and similarly situated assistant store managers overtime wages as required by law. Under FLSA, an employer is prohibited from employing any employee "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).  An exemption is available for certain employees "employed in a bona fide executive, administrative, or professional capacity."  29 U.S.C. § 213(a)(1); see Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 474 (S.D.N.Y. 2010). Defendants assert that the ASMs are properly classified as exempt and, as such,

4

they are not entitled to overtime payments. (Answer ¶ 55, Docket No. 16.)

Notably, concurrent performance of exempt and nonexempt work does not disqualify an employee from this exemption. 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.106.

> Generally, exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work. In contrast, the nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods. An employee whose primary duty is ordinary production work or routine, recurrent or repetitive tasks cannot qualify for exemption as an executive.

29 C.F.R. § 541.106(a). The term "primary duty" means "the principal, main, major or most important duty that the employee performs," and its determination involves a fact-specific analysis based upon "the character of the employee's job as a whole." 29 C.F.R. § 541.700(a).

> Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a). "The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee;" however, this "is not the sole test." 29 C.F.R. § 541.700(b). For example:

> [A]ssistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register. However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement.

29 C.F.R. § 541.700(c).

Plaintiff argues that he has met the minimal burden warranting conditional certification because "ASMs at OfficeMax are governed by the same set of designated job duties and responsibilities, are compensated in the same manner, are classified as exempt from the FLSA's overtime provisions, and are subject to the same job description, corporate policies and work rules." (Pl's Mem of Law at 20, Docket No. 56.) Thus, Plaintiff argues, "Office Max has a 'uniform business practice' of treating ASMs similarly throughout the United States." (Id.) To the extent that Plaintiff asserts that no further evidence is needed, this Court disagrees. Jenkins, 853 F. Supp. 2d at 324 (mere existence of a common job description is insufficient to warrant conditional certification); Khan v. Airport Mgmt. Servs., No. 10–CV–7735, 2011 WL 5597371, *4 (S.D.N.Y. Nov. 16, 2011) (same); Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 476 (S.D.N.Y. 2010) (same). As Defendants argue, Plaintiff is not alleging that the ASM job description or any relevant official policy demonstrates that the ASMs are improperly classified as exempt under FLSA. Instead, he argues that, in contrast to the official job description, the primary duties actually carried out by ASMs did not substantially differ from the duties of non-exempt hourly employees. (See Compl. ¶¶ 49-53; Heitzenrater Dep at 22, Docket No. 57.) Thus, in order to show that Plaintiff and any opt-in Plaintiffs were subject to "a common policy or plan that *violated the law*," Myers, 624 F.3d at 555 (emphasis added), there must be a modest factual showing they "were similarly situated with respect to the claim that they were required to perform non-managerial job duties in contravention of the formal job description." Guillen, 750 F. Supp. 2d at 476.

Here, in addition to information regarding the standardized job description for ASMs,

Plaintiff has submitted excerpts from his deposition testimony and from nine opt-in Plaintiffs, as well as declarations from five additional opt-in Plaintiffs. (Docket No. 57.) As stated in similar language in the declarations, these Plaintiffs spent the "majority" of their time as ASMs "greeting customers, unloading trucks, stocking shelves, selling warranties, accessories and other products to customers, cleaning and recovering the store, collecting shopping carts, and completing planograms," which were "the same duties as hourly associates." (Sebolt Decl ¶ 4; see Beall Decl ¶ 3; Schisler Decl ¶ 3; Tobolski Decl ¶ 3; Pfaff Decl ¶ 3-4.)  The deposed opt-in Plaintiffs similarly testified that at least 75% of their time was spent on such non-exempt duties. (Vignola Dep at 326 (75%); Gebauer Dep at 305-06 (75-80%); Adkins Dep at 78, 301 (90-95%); Riley Dep at 309-10 (75-80%), Allen Dep at 156 (80-85%); see also Billner Dep at 304-5 ("most . . .if not all" of his tasks were the same as those performed by hourly workers); Kent Dep at 34, 150 ("vast majority" of job entailed non-managerial duties).)  Several of the opt-in Plaintiffs further declared that, despite the fact that their "primary job duties" consisted of non-exempt tasks, they worked on average in excess of 40 hours per week without receiving overtime compensation. (Beall Decl ¶ 2 (45-50 hours); see Sebolt Decl ¶ 2 (50 hours); Schisler Decl ¶ 1 (50 hours); Tobolski Decl ¶ 6 (45 hours); Pfaff Decl ¶ 2 (45-55 hours)).  This evidence, collected from Plaintiff and fourteen additional opt-in Plaintiffs from approximately twelve different states, is sufficient to meet the lenient modest factual showing needed at this preliminary stage to warrant a grant of conditional certification. See Rubery v. Buth-Na-Bodhaige, 569 F. Supp. 2d 334, 337 (W.D.N.Y. 2008) (modest factual burden met with affidavits and time records from other shop managers which indicated commonality of duties"); cf. Jenkins, 853 F. Supp. 2d at 324-25 (conditional certification unwarranted where evidence consisted of only the

named plaintiff's own deposition testimony and one out-of-context page from a consultant's report).

In opposition, Defendants submitted the declarations of 29 additional ASMs, including one who worked in the same Batavia, New York store as Plaintiff, who describe their duties at their respective stores as primarily managerial. (Docket Nos. 63-73; see Sovocool Decl, Docket No. 71-2.) "However, courts in this Circuit regularly refuse to rely on such [opposing] declarations when plaintiffs have not yet had an opportunity to depose the declarants." Barry v. S.E.B. Service of New York, Inc., No. 11–CV–5089 (SLT)(JMA), 2013 WL 6150718, *4 (E.D.N.Y. Nov. 22, 2013); Winfield v. Citibank, N.A., 843 F. Supp. 2d 397, 407 n. 6 (S.D.N.Y. 2012); Aros v. United Rentals, Inc., 269 F.R.D. 176, 180 (D. Conn. 2010); Ruggles v. WellPoint, Inc., 591 F. Supp. 2d 150, 161 (N.D.N.Y. 2008); see Rubery, 569 F. Supp. 2d at 337 (at the conditional certification stage, a plaintiff need not "conclusively demonstrate that she and the other putative class members are, in fact, similarly situated). This is because at the conditional certification stage "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations. Indeed, a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." Lynch v. U.S. Auto. Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)(internal citations omitted); see Amador v. Morgan Stanley & Co., No. 11 Civ. 4326 (RJS), 2013 WL 494020, *4 (S.D.N.Y. Feb. 7, 2013)(even after a seven-month discovery period, the application of a heightened standard to the issue of conditional certification was inappropriate). The balancing of the competing affidavits would require credibility determinations and the resolution of legal contentions, and such conclusions are inappropriate at this stage of the

proceedings. See Amador, 2013 WL 494020 at *8-9. Instead, these declarations, as well as those of the store associates who worked with Plaintiff,[2] are better considered in connection with either a motion for decertification or a challenge to Plaintiff's suitability as a representative of the proposed Rule 23 class. See Fed. R. Civ. P. 23 (the named class representative must "fairly and adequately protect the interests of the class"); Jenkins, 853 F. Supp. 2d at 320 (FLSA's conditional certification need not meet Rule 23's strict requirements of numerosity, typicality, commonality and representativeness).

Defendants also submit additional deposition excerpts from the deposed opt-in Plaintiffs. (Docket Nos. 73-75.) Defendants argue these excerpts establish that, in contrast to the named Plaintiff, all of the opt-in Plaintiffs performed "a variety of . . . duties, including hiring, training, scheduling, supervising, delegating, coaching, evaluating performance, counseling, disciplining, and managing the store." (Defs' Mem in Opp'n at 9-14, 25.) In many of the examples cited, however, the testifying Plaintiff qualified his or her statements with respect to either the frequency with which the managerial duty was performed (e.g. Gebauer Dep at 53-54 (computerized scheduling system "didn't really take that long")) or the extent to which he or she was supervised in its performance. (e.g. Vignola Dep at 254-55 (created schedule "with the approval of either the store manager or the district manager" in the store manager's absence); Kesselhon Dep at 137-38 (coached associates only at direction of store manager).) For example, several of the opt-in Plaintiffs stated that they were told by store managers what to write on employee performance reviews. (Gebauer Dep at 244 (store manager "pretty much told me what I should write up, and then he

---

[2]See Baiocco Decl, Docket No. 65-2; Berardini Decl, Docket No. 65-3; Hastings Decl, Docket No. 67-4; Mowers Decl, Docket No. 69-4; Welch Decl, Docket No. 72-3.

delivered it"); Petriga Dep at 219-20 (completed a series of performance reviews once and was directed to give all employees "a three or higher")).  Further, any discrepancies between the job descriptions listed on an opt-in Plaintiffs' resume and his or her testimony similarly creates a credibility issue not properly considered at this time. (See Decl of Timothy S. Anderson, Esq. ¶¶ 5-6, Docket No. 62; e.g. Kent Dep at 53-57 (describing the job descriptions listed on his resume as "fluff")).

In short, at this stage of the proceedings, Defendants' evidence in opposition indicates only a variance among the putative class members regarding the extent to which they performed unsupervised managerial functions. Such a variance does not negate Plaintiff's modest factual showing that he and the other opt-in Plaintiffs primarily performed the same work as hourly associates, and therefore were improperly classified by Defendants as exempt from overtime payment requirements. Rubery, 569 F. Supp. 2d at 337; see Parks v. Dick's Sporting Goods, Inc., No. 05-CV-6590 CJS, 2007 WL 913927, *4 (W.D.N.Y. Mar. 23, 2007) (fact that variation in job duties may ultimately support a finding that some potential plaintiffs are not similarly situated does not require denial of conditional certification).

Finally, Plaintiff asserts that, in the event conditional certification is granted, he will attempt to meet and confer with Defendants on the form of the notice and the manner in which it is to be disseminated. (Pl's Mem of Law at 22.)  In order to facilitate the sending of the resulting notice, Plaintiff further requests that this Court compel Defendants to produce contact information for all ASMs nationwide, with the exception of California. (Pl's Mem of Law at 22-23.)  Specifically, Plaintiff requests "[a] list, in electronic format, of all persons employed by Defendant[s] as Assistant Store Managers at any time from

September 21, 2009, to the present including: names, addresses telephone numbers, dates of employment, locations of employment, and work and personal e-mail addresses." (Id.)

Defendants do not specifically address this request, but argue in opposition to conditional certification that Plaintiff's evidence is insufficient to support a potential nationwide class of almost 2,000 members. (Defs' Mem in Opp'n at 28.) "However, while courts have refused to certify national collective actions based solely on an individual's deposition or even based on several geographically clustered plaintiffs' depositions, courts regularly conditionally certify collective actions where, as here, evidence is presented from multiple employees from multiple locations nationwide." Amador, 2013 WL 494020 at *9 (internal marks omitted) (quoting Stevens v. HMSHost Corp., No. 10 Civ. 3571(ILG)(VVP), 2012 WL 4801784, *3 (E.D.N.Y. Oct 10, 2012) (nationwide conditional certification granted based on deposition testimony from plaintiffs in four states)); cf. Guillen, 750 F. Supp. 2d at 477 (conditional certification of national class denied where evidence was limited to five ASMs who experienced the allegedly illegal activities at nine stores exclusively in the New York City metropolitan area). As noted above, the deposition testimony and declarations submitted represent fifteen plaintiffs in at least twelve states. Plaintiff's motion for conditional certification is therefore granted.

Further, this Court will exercise its discretion and order Defendants to disclose the contact information as requested. See Hinterberger v. Catholic Health Sys., No. 08-CV-380S, 2009 WL 3464134, *11 (W.D.N.Y. Oct. 21, 2009) (citing Wills v. Amerada Hess Corp., 379 F.3d 32, 41 (2d Cir. 2004)) (a request for contact information to facilitate notice, like all pre-trial discovery, is a matter within the court's sound discretion). The parties are

directed to confer and attempt to agree on the form of the notice and any related documents, such as a consent form or information sheet. See Hinterberger, 2009 WL 3464134 at *12. If the parties are able to agree, they shall file a stipulation to that effect, with the proposed documents appended. The Court will either "so order" the stipulation or modify the documents. If the parties are unable to reach agreement, they shall identify the particular language in dispute and submit their respective proposals to the Court, along with memoranda, not to exceed 10 pages, setting forth the rationale for their version of the disputed language. The stipulation, or respective proposals, shall be filed no later than 45 days after the date of this Decision. Defendants are directed to provide the requested contact list within seven days of this Court's approval of the collective action notice.

## IV. CONCLUSION

Plaintiff has made the modest factual showing necessary to warrant conditional certification of a FLSA collective action consisting of all current and former ASMs employed by Defendants in the United States, with the exception of those in California, at any time from September 21, 2009 to present.

## V. ORDERS

IT HEREBY IS ORDERED that Plaintiffs' Motion for Conditional Certification of the FLSA collective action (Docket No. 55) is GRANTED;

FURTHER, that the parties shall file either a stipulation or memoranda with respect to the collective action notice within 45 days of the date of this Decision and Order;

FURTHER, that Defendants are directed to produce the contact information for the potential opt-in Plaintiffs as requested within 7 days of the Court's approval of the collective action notice.

SO ORDERED.

Dated: February 1, 2014
          Buffalo, New York

                                            /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                            Chief Judge
                                            United States District Court