UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
JEFFREY HEITZENRATER, GERONIMO :
PADILLA, TIMOTHY HAWK, VALLIE :
MASIAS, JASON ROBINSON, and :
MARK GENOVESI, Individually and On :
Behalf of All Others Similarly Situated, :
 :
                Plaintiffs, : Civil Action No. 1:12-cv-00900-WMS
 :
  -against- :
 :
OFFICEMAX, INCORPORATED and :
OFFICEMAX NORTH AMERICA, INC., :
 :
                Defendants. :
---------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DEFENDANTS' CORPORATE REPRESENTATIVE TO TESTIFY AS TO COMMUNICATIONS WITH COUNSEL RELATED TO DEFENDANTS' AFFIRMATIVE DEFENSES OF GOOD FAITH AND LACK OF WILLFULNESS**

Pursuant to Rule 37(a)(3) of the Federal Rules of Civil Procedure, Plaintiffs Jeffrey Heitzenrater, Geronimo Padilla, Timothy Hawk, Vallie Masias and Mark Genovesi (collectively "Plaintiffs") respectfully move to compel the corporate representative designated by Defendants OfficeMax, Incorporated and OfficeMax North America, Inc. ("OfficeMax" or "Defendants") to testify to communications with counsel related to Defendants' affirmative defenses of good faith and lack of willfulness asserted by Defendants, as described below.[1]

**INTRODUCTION**

Plaintiffs assert that the Defendants violated the Fair Labor Standards Act ("FLSA") and state laws by misclassifying Assistant Managers ("AMs") as exempt and not paying overtime to

---

[1] Plaintiffs' counsel has moved to withdraw from representing Plaintiff Jason Robinson (Dkt. No. 136) and the instant motion has not been brought on Mr. Robinson's behalf.

Plaintiffs and other AMs. Defendants contend that AMs were properly classified as exempt under federal and state law and were not entitled to overtime wages.[2] Defendants further contend that, at all times, it acted in good faith and did not willfully violate the law. Answer (Dkt. 132) at Affirmative Defense at ¶¶ 18, 33, 35, 36.

Defendants designated Chris Richardson ("Richardson") as their Fed. R. Civ. P. 30(b)(6) corporate representative to testify on the topics of, *inter alia*, Defendants' affirmative defenses of good faith and lack of willfulness. Richardson refused to testify at his February 26, 2015 deposition regarding communications with Defendants' in-house counsel, Knox McMillan ("McMillan"), regarding these defenses upon instruction of counsel on the basis of the attorney-client privilege despite the fact that McMillan played a "lead role" in Defendants' decision to classify AMs as exempt.[3]

Defendants' claim of privilege is fatally flawed. As demonstrated below, Defendants waived the attorney-client privilege with respect to communications regarding the decision to classify AMs as exempt by pleading these two affirmative defenses that require it to prove that it acted in "good faith" when it made the classification decision (and any times that it re-evaluated the classification decision). Defendants thereby voluntarily injected its "state of mind" into this case. Whether Defendants ultimately relied on its counsel's advice is not relevant.

In *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("*Bilzerian*") the Second Circuit held that the attorney-client privilege is waived in virtually identical situations. District courts throughout the Second Circuit repeatedly have followed *Bilzerian* regarding at-

---

[2] OfficeMax reclassified the AM position as non-exempt on or about November 2014, in conjunction with its merger with Office Depot.
[3] Defendants did not provide a log of the privileged oral communications required by Local Rule 26(e)(1)(B)(ii).

issue waiver. *Scott v. Chipotle Mexican Grill, Inc*., 2014 U.S. Dist. LEXIS 175775, at *232-34 (S.D.N.Y. Dec. 18, 2014) (citing *Bilzerian* and holding that defendant's assertion of good faith defense waived privilege despite defendants' "to plead around them by avoiding mention of the advice of counsel, except to disclaim it.") ("*Chipotle*"); *Wang v. Hearst Corp*., 2012 U.S. Dist. LEXIS 179609, at *4-8 (S.D.N.Y. Dec. 19, 2012) (same). These cases rest on the sound rationale that a party cannot maintain privilege when they inject facts into a case which require examination of its entire state of mind.

Here, Defendants have not only asserted affirmative defenses of good faith and lack of willfulness that reflect their state of mind (and impact whether liquidated damages will be imposed and whether the statute of limitations is three years as opposed to two, 29 U.S.C. §§ 255, 260), but also expressly state reliance on the advice of counsel to support its decision not to pay overtime to AMs and to classify them as exempt from overtime under federal and state law.

Plaintiffs have a right to challenge Defendants' good faith claim and to inquire into what exactly its counsel advised. The Court should reject the Defendants' improper privilege claims and compel Richardson to testify in his capacity as Defendants' corporate representative regarding his conversations with McMillan (and any other of Defendants' attorneys) regarding the asserted affirmative defenses of good faith and lack of willfulness.

## **FACTS**

In response to Plaintiffs' claims that Defendants misclassified AMs nationwide, Defendants asserted, *inter alia*, the affirmative defenses of good faith and lack of willfulness. *See* Dkt. No. 132 (Answer to Amended Complaint) at ¶¶ 17, 18, 27, 33, 34, 35. Plaintiffs noticed the deposition of Defendants' corporate representative on numerous topics, including their good faith and lack of willfulness defenses, specifically:

6. The decision to classify AMs as exempt, including the facts and evidence supporting Defendants' good faith determination that AMs were properly classified including, but not limited to:

   a. the facts supporting Defendants' affirmative defenses that Plaintiffs and the members of the collective and classes are exempt from overtime under the FLSA;
   b. the individual(s) involved in making or approving the decision;
   c. the reasons for the decision;
   d. the exemptions on which Defendants relied;
   e. the existence and location of documents which reflect such decision;
   f. the existence and location of documents concerning the process that led to the decision on how and to classify AMs as exempt; and
   g. the affirmative steps that Defendants undertook to ascertain that their decision to classify AMs as exempt complies with the relevant law and its requirements.

   . . .

8. The factual basis for Defendants' seventeenth, twenty-seventh, and thirty-third affirmative defenses that any violation of wage and hour laws related to the classification of AMs as exempt was not willful.

*See* Notice of Deposition Pursuant to Fed.R.Civ.P. 30(b)(6), Exhibit A to the Affirmation of Susan H. Stern ("Stern Aff."), filed herewith.

Defendants produced Chris Richardson, OfficeMax's Vice President for the East Region, as its corporate representative to testify on these topics.[4] Richardson understood that Defendants had designated him as the corporate representative on the topics enumerated in the notice, including the affirmative defenses of good faith and lack of willfulness. *Id*. at 10:2-17.

Richardson's testimony squarely puts the advice of Defendants' in-house counsel, Knox McMillan, at issue in connection with Defendants' decision to classify AMs as exempt. Specifically, Richardson testified that he and McMillan were part of a "team" which classified

---

[4] Deposition of Chris Richardson ("Richardson Depo"), Exhibit B to Stern Aff., at 8:11-13. Since the recent merger, Richardson is employed by Office Depot. *Id*. at 8:14-18. Prior to that, Richardson was employed by OfficeMax as Vice President of Store Operations. *Id*. at 8:18-9:2.

the AM position as exempt in 2008 and 2011. *Id* at 42:3-43:12, 44:16-17, 48:19-49:1.[5]  In classifying the AM position as exempt, Richardson, McMillan and Defendants' team relied on the job description (which they wrote), as well as their informal observations in the field. *Id*. at 123:9-12.  Richardson had numerous in-person and telephonic conversations with McMillan in connection with the job description and the classification of the AM position in both 2008 and 2011. *Id*. at 128:2-129:6 (2008 job description and exempt classification); 130:13-131:11 (2011 job description and exempt classification).

Critically, Richardson admitted that McMillan was "actively involved" in classifying AMs as exempt and indeed, that McMillan was the "lead component" in the decision to classify AMs as exempt. *Id*. at 125:15-22;126:22-127:22.  However, when asked the next logical question – the substance of the conversations with McMillan – Richardson refused to answer, based upon the assertion of privilege by Defendants' counsel and counsel's instruction not to respond. *Id*. at 128:20-129:20; 131:20-23.

After refusing to testify as to the substance of his communications with McMillan, Richardson reconfirmed that he had consulted with McMillan on the issue of the exempt classification of AMs in both 2008 and 2011 on "several occasions." *Id*. at 156:2-9.  Richardson reiterated that the "team [did] rely on Mr. McMillan's input . . . in both 2008 and 2011." *Id*. at 156:24-157:1.  Nonetheless, Defendants' counsel refused to withdraw his objection on this basis of the attorney-client privilege, noting that "[t]he instruction [not to answer] still stands." *Id*. at 156:12-13;   174: 12-14; 176:15-18;   176:19-20.

Notably, each time Defendants' counsel invoked the attorney-client privilege and

---

[5] To prepare for his own deposition, Richardson also reviewed McMillan's deposition given earlier in the case *Id*. at 22:7-10.

instructed Richardson not to answer, Plaintiffs' counsel explained the implied/at-issue waiver. *Id*. at 128:25-129:20; 157:3-158:1; 176:21-23. After the second invocation of the privilege one of Plaintiffs' attorneys contacted the Court on a break in the deposition regarding the issue of privilege. *Id*. at 157:16-158:1. The Court advised that Plaintiffs should continue with the deposition and file a Motion to Compel, thereby giving rise to the instant Motion. *Id*.

## ARGUMENT

### A. Standard for Relevancy of Evidence Sought During Discovery

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets the contours for discovery and provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *Adams v. Buffalo Pub. Schs*, 2014 U.S. Dist. LEXIS 109642, at *13 (W.D.N.Y Aug. 7, 2014). The relevance standard is broad in scope "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978) (citation omitted). In the context of employment cases, the Supreme Court has explained that: "liberal civil discovery rules give plaintiffs broad access to employers' records in an effort to document their claims." *Baker v. Gerould*, 2008 U.S. Dist. LEXIS 28628, at *4 (W.D.N.Y. March 27, 2008) (citing *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 657 (1989)).

### B. Plaintiffs Are Entitled to the Requested Discovery

#### 1. Second Circuit Jurisprudence Demonstrates a Waiver of the Privilege

In *Bilzerian*, the Second Circuit held that the privilege normally protecting attorney-client communications regarding the relevant issue "may implicitly be waived when defendant asserts a claim [like "good faith"] that in fairness requires examination of protected communications." *Bilzerian*, 926 F.2d at 1292. The Court further explained that the defendant's "conversations

with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent." *Id.*; *accord In re County of Erie,* 546 F.3d 222, 228-29 (2d Cir. 2008) ("the assertion of a good-faith defense involves an inquiry into state of mind, which typically calls forth the possibility of implied waiver of the attorney-client privilege.").

Though *Bilzerian* involved a case involving securities fraud charges, it is well-settled that the Second Circuit's rationale applies equally to a defendant's assertion of good faith as a defense in an FLSA action. For example, Magistrate Netburn of the Southern District of New York recently applied *Bilzerian* in the FLSA context to deny defendant Chipotle's motion for a protective order to prevent the plaintiffs from discovering its "attorney-client communications regarding the decision to classify apprentices as 'executive' and thus exempt from overtime pay." *Chipotle*, 2014 U.S. Dist. LEXIS 175775, at *218-19, *232-34 291. As in the instant case, Chipotle asserted affirmative defenses of good faith and lack of willfulness. Magistrate Netburn set forth the law in this Circuit stating that "courts within this Circuit, relying on *Bilzerian*, have reaffirmed the broader principle that forfeiture of the privilege may result where the proponent asserts a good faith belief in the lawfulness of its actions, even without expressly invoking counsel's advice." *Chipotle*, 2012 U.S. Dist. LEXIS at *224 (citation omitted). The "waiver may apply even if the defendant claims to have ignored the advice of counsel." *Id.* (citations omitted).[6]

---

[6] *See also Chevron Corp. v. Donziger*, 2013 WL 6182744, at *3 (S.D.N.Y. Nov. 21, 2013) (stating that "even if a party does not attempt to make use of a privileged communication he may waive the privilege if he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication") (citation omitted); *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 2012 WL 2568972, at *7 (S.D.N.Y. July 3, 2012) (stating that courts have "rejected the argument . . . that a party could present state of mind evidence without waiving the

7

In *Chipotle*, as in this case, there was no dispute that the defendant did, in fact, obtain the advice of counsel regarding the exempt classification at issue. *Id*. at *233. Thus, Chipotle clearly put the advice of its counsel "at issue" and waived the attorney-client privilege with regard to its communications with its counsel regarding the exempt classification. *Id*. District Judge Carter later upheld the order and overruled the defendants' objections. *Scott v. Chipotle Mexican Grill, Inc.*, No. 12-cv-8333 (S.D.N.Y.), Order (Dkt. 854).

*Chipotle* is virtually indistinguishable from the instant case on the issue of implied/at-issue waiver. Here, it is undisputed that Defendants have asserted good faith and a lack of willfulness numerous times throughout its Answer. *See* Dkt. No. 132 (Answer to Amended Complaint) at ¶¶ 17, 18, 27, 33, 34, 35. It is likewise undisputed that Richardson testified at his deposition, the corporate representative on the topics of good faith and willfulness, that Defendants relied on the advice of attorney McMillan regarding the job description for and classification of the AM position. Richardson Depo, Exhibit B to Stern Aff, at 123:9-12; 125:15-22; 128:2-129:6; 130:13-131:11; 156:2-9; 156:24-157:1. This is the exact type of sword/shield practice that the Second Circuit forbade in *Bilzerian*.

Accordingly, Defendants have waived the attorney-client privilege regarding their communications about the classification of the AM position and the Court should order Defendants to reveal the content of such communications that relate to their affirmative defenses and the classification of the AM position. *Bilzerian*, 926 F.2d 1285; *Chipotle*, 2014 U.S. Dist. LEXIS 175775; *Wang*, 2012 U.S. Dist. LEXIS 179609.

---

attorney client privilege, so long as it refrained from relying on the advice of counsel"). *Arista Records LLC v. Lime Gr. LLC*, 2011 U.S. Dist. LEXIS 42881, at *11 (S.D.N.Y. Apr. 20, 2011) (stating that "[e]ven if . . . [Defendant's] beliefs about the lawfulness of his conduct were actually separate from legal advice . . . Plaintiffs still would be entitled to know if [Defendant] ignored counsel's advice.") (internal citations and quotation marks omitted).

8

## 2. Policy and Fairness Support Waiver of the Privilege

Lastly, it would be fundamentally unfair to permit Defendants to shield their communications with counsel regarding their classification decisions. "Because legal advice that a party received may well demonstrate the falsity of its claim of good faith belief, waiver in these instances arises as a matter of fairness, that is, it would be unfair to allow a party to 'use[ ] an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion.'" *Leviton Mfg. Co., Inc. v. Greenberg Traurig LLP*, 2010 U.S. Dist. LEXIS 128849, at *8 (S.D.N.Y. Dec. 6, 2010) (quoting *John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003)).

Put another way, because Defendants have sought the benefits of legal advice -- *e.g.*, as a limitation on or protection from liquidated damages or the third year of the statute of limitations -- "on the very issue on which it asserts good faith, it puts its relevant attorney-client communications at issue and thereby waives the privilege." *Chipotle*, 2014 U.S. Dist. LEXIS 175775, at *245. To hold otherwise would effectively allow Defendants to hide behind the shield of the attorney-client privilege, while at the same time asserting privilege against the discovery of the substance of those communications as a sword against liability, liquidated damages, and a longer statute of limitations. *John Doe Co. v. United States*, 350 F.3d 299, 304 (2d Cir. 2003) ("Forfeiture of this type is premised on the unfairness to the adversary of having to defense against the privilege holder's claim without access to pertinent privileged materials that might refute the claim.").

Finally, in terms of fairness, Defendants are not without options. Defendants have pled a "panoply of defenses." Dkt. No. 183; *Chipotle*, 2014 U.S. Dist. LEXIS 175775, at *241. If Defendants do not wish to waive the attorney-client privilege as to the issues of good faith and

lack of willfulness, then their option is to seek to amend their answer to withdraw those defenses. *Id*. In this way, Defendants may rely on their other defenses while maintaining their privilege. *Id*.

## **CONCLUSION**

Plaintiffs respectfully request that the Court enter an Order compelling Defendants to re-produce Chris Richardson for deposition as its corporate representative to testify on all aspects of Defendants' affirmative defenses of good faith and lack of willfulness, including all communications with Knox McMillan or any other counsel, and granting any other further relief as this Court may deem just and proper.

Dated: March 16, 2015
       Boca Raton, Florida

                                Respectfully submitted,

                            By: /s/ SUSAN H. STERN
                              Susan H. Stern
                              E-mail: sstern@shavitzlaw.com
                              Gregg I. Shavitz
                              E-mail: gshavitz@shavitzlaw.com
                              Paolo C. Meireles
                              E-mail: pmeireles@shavitzlaw.com
                              Michael Palitz
                              E-mail: mpalitz@shavitzlaw.com
                              SHAVITZ LAW GROUP, P.A.
                              1515 South Federal Highway, Suite 404
                              Boca Raton, FL 33432
                              Telephone: (561) 447-8888
                              Facsimile: (561) 447-8831

                              and

                              Seth R. Lesser
                              E-mail: seth@klafterolsen.com
                              Fran L. Rudich
                              E-mail: fran@klafterolsen.com
                              KLAFTER, OLSEN & LESSER, LLP
                              Two International Drive, Suite 350
                              Rye Brook, NY 10573

Telephone: (914) 934-9200
Facsimile: (914) 934-9220

*Attorneys for Plaintiffs, the Collective and the Classes*

## CERTIFICATE OF SERVICE

 I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of Court using CM/ECF on **March 16, 2015**. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

**/s/ Susan H. Stern**
Susan H. Stern

## SERVICE LIST
*Jeffrey Heitzenrater v. Officemax, Inc., et al*
**CASE NO.: 1:12-cv-00900-WMS**
**United States District Court, Western District of New York**

Trent M. Sutton
Email: tsutton@littler.com
LITTLER MENDELSON, P.C.
400 Linden Oaks, Suite 110
Rochester, NY 14625
Phone: 585.203.3400
Fax: 585.203.3414

Lee J. Hutton (admitted *pro hac vice*)
E-mail: lhutton@littler.com
LITTLER MENDELSON, P.C.
1100 Superior Avenue, 20th Floor
Cleveland, OH 44114
Phone: 216.623.6140
Fax: 216.649.0522

Meredith C. Shoop (admitted *pro hac vice*)
Email: mshoop@littler.com
LITTLER MENDELSON, P.C.
1100 Superior Avenue, 20th Floor
Cleveland, OH 44114
Phone: 216.623.6098

Fax: 216.937.0171

Timothy S. Anderson (admitted *pro hac vice*)
Email: tanderson@littler.com
LITTLER MENDELSON, P.C.
1100 Superior Avenue, 20th Floor
Cleveland, OH 44114
Phone: 216.696.7600
Fax: 216.696.2038

Michael G. Congiu (admitted *pro hac vice*)
Email: mcongiu@littler.com
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1000
Chicago, IL 60654
Phone: 312-372-5520
Fax: 312-372-7880

*Attorneys for Defendants*

**Served via CM/ECF**