UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JEFFREY HEITZENRATER, et al.

                         Plaintiffs,

      v.

OFFICEMAX, INCORPORATED,
OFFICEMAX NORTH AMERICA, INC.,

                         Defendants.
_____

**DECISION
and
ORDER**

**12-CV-900S(F)**

APPEARANCES:        KLAFTER OLSEN & LESSER LLP
                        Attorneys for Plaintiffs
                        SETH R. LESSER,
                        FRAN L. RUDICH, of Counsel
                        Two International Drive, Suite 350
                        Rye Brook, New York   10573

                        LITTLER MENDELSON, P.C.
                        Attorneys for Defendants
                        TIMOTHY S. ANDERSON
                        LEE J. HUTTON, of Counsel
                        1100 Superior Avenue, 20th Floor
                        Cleveland, Ohio   44114

      In this action alleging violations of the Fair Labor Standards Act and state (New York, Illinois, and Ohio) wage and hour laws, Plaintiffs[1], by papers filed March 13, 2015 (Doc. No. 148) moved to compel deposition testimony of Defendants' Rule 30(b)(6) representative Mr. Chris Richardson ("Richardson"), OfficeMax's Vice President – East Region, relating to communications with Defendants' in-house counsel, Mr. Herman Knox McMillian ("McMillian"), and by papers filed March 24, 2015 (Doc. No. 153) Plaintiff also moved to compel production of numerous documents including e-mails

_____

[1]   Excluding named Plaintiff, Jason Robinson, as to whom Plaintiffs' counsel has withdrawn.   *See* Doc. No. 173.

related to these discussions and communications ("Plaintiffs' motions").

According to Plaintiffs, at his deposition on February 26, 2015, Richardson refused to answer questions directed to the specifics of communications between himself and McMillian relating to Defendants' decision to classify collective and class action members, assistant managers of Defendants' retail stores, as exempt employees, and that Defendants improperly asserted that such communications and responsive documents were protected by the attorney-client privilege as a bar to Plaintiffs' attempt to elicit details of these communications, and as the basis for Defendants' objection to Plaintiffs' document production requests.  Plaintiffs contend that even assuming the privilege is otherwise applicable, by pleading as affirmative defenses that Defendants acted in good faith and without any intention to violate either the FLSA or state laws with respect to Defendants' classification of the assistant managers as exempt employees, Defendants have thereby placed the question of their good faith in attempting to comply with the law with respect to such classification at issue thus waiving any protection under the privilege against the requested testimony by Richardson and the documents Defendants have withheld as detailed in Defendants' privilege log.  *See* Doc. No. 154 at 2-5 (referencing Rudich Affirmation Exhs. A & B (Doc. No. 155).

In opposition, Defendants maintain that under applicable caselaw, particularly *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) ("*Erie*") unless a person has placed "reliance on privileged advice to support a claim or defense," Doc. No. 166 ("Defendants' Memorandum") at 1, there can be no "at issue" or "implied waiver" of the privilege.  *In re County of Erie*, 546 F.3d at 226.  As the court stated in *Erie*, "[w]e hold

that a party must *rely* on privileged advice from his counsel to make his claim or defense." *Id.* at 229 (italic in original).   In *Erie*, the Second Circuit instructed that the privilege should be found to have been waived only in the case of an unfairness where "a 'party uses an assertion of fact to influence the decision maker while denying its adversary access to privileged material potentially capable of rebutting the assertion.'" *In re County of Erie*, 546 F.3d at 229 (quoting *John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003)).   The Second Circuit further instructed "that '[w]hether fairness requires disclosure has been decided . . . on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted.'"  *Id.* (quoting *In re Grand Jury Proceedings*, 219 F.3d 175, 183 (2d Cir. 2000)).  Here, despite Defendants' assertions to the contrary, *see* Declaration of Timothy S. Anderson In Opposition to Plaintiffs' Motion to Compel, Doc. No. 165-1, ("at no point during litigation of this case have Defendants represented or given any indication that they intend to rely on advice of counsel or any privileged communications to establish any of their defenses"), the record amply supports the opposite, *i.e.*, that Defendants have placed their good faith in attempting to comply with applicable law in issue and have admitted that in doing so, Defendants substantially relied on advice of counsel, particularly McMillian's. Specifically, not only have Defendants repeatedly pleaded several affirmative defenses as to which Defendants have the burden of proof, *see* Answer – Affirmative Defenses ¶ ¶ 17, 18, 27, 33, 34, and 35, each of which asserts Defendants acted in good faith and not in willful violation of applicable laws with respect to the Defendants' classification decision at issue, but Richardson's deposition demonstrates unequivocally that Defendants expressly relied on counsel's advice as a significant factor in making the

classification decision.  More particularly, when asked how Defendants assured that

Defendants' assistant managers were "properly classified" Richardson explained that in

addition to field observations, and his discussions with store managers, assistant

managers, and district managers, Defendants

> "would <u>work with the Legal Department to . . . talk through</u> what the
> observations were and validate that . . . the [assistant managers][2] position
> descriptions, the job description was still accurate, but as well as . . . <u>any</u>
> <u>status implications</u> based on what we are seeing and observing  . . . <u>that</u>
> <u>might impact that job</u>."  Doc. No. 151-2 at 123.[3]

Richardson's testimony also confirms such discussions with counsel regarding

Defendants' classification decision was not casual or isolated but occurred during

"several conversations."  *Id.* at 128.  Indeed, Defendants' counsel had been involved in

the prior decision-making process regarding Defendants' assistant manager

classification which took place in 2008.  *Id.* at 130 ("Knox [McMillian] was part of those

decisions.").  In his deposition, Richardson also disclosed that his discussions with

counsel on the classification question occurred in person and by telephone "on multiple

occasions."  In fact, as Richardson also testified, there were <u>no</u> <u>discussions</u> of the

classification subject that "did not involve the legal Department [ ]," *id.* at 125, that

counsel was "<u>actively</u> <u>involved</u> in any of those discussions [on the assistant manager

classification question] and <u>making</u> <u>any</u> <u>final</u> <u>determinations</u>," *id.*, and that counsel

served in a "<u>lead</u>" capacity in "<u>guid[ing]</u>" Richardson and other of Defendants' officials in

the classification decision.  *Id.* at 127-128.  Without objection, Richardson further

testified that counsel's advice had "<u>considerable</u> <u>components</u> [ ] <u>as</u> <u>to</u> <u>what</u> <u>final</u> <u>decision</u>

<u>we</u> <u>made</u>" and that Defendants' "team" relied upon counsel's advice in making the

---

[2]  All bracketed material added.

[3]  All underlining added.

reclassification decision. *Id.* at 156.  As Richardson testified:

Q:    "and did the team rely on Mr. McMillan's [*sic*] input in that regard in both 2008 and 2011?"

A:    "Yes."

*Id.* at 156-57.

The record thus fully supports that not only have Defendants placed the question of Defendants' good faith and lack of willfulness at issue by pleading several affirmative defenses to avoid liquidated damages and an expanded statute of limitations, but have also expressly relied upon such advice to support these assertions thereby satisfying the requirement of an implied waiver of the privilege compliant with the requirement of *Erie*.

Although Defendants maintain that because Defendants have not relied on legal advice from Defendants' corporate counsel and will not rely on "any privileged communications to support its [*sic*] defenses," Defendants' Memorandum at 3 (referencing Anderson Declaration ¶ 7) this assertion "amounts to little more than semantics," *Wang v. The Hearst Corporation*, 2012 WL 6621717, at *2 (S.D.N.Y. Dec. 19, 2012), for several reasons.  First, as the analysis of Richardson's deposition testimony, *supra*, conclusively demonstrates, Defendants have already relied on counsel's advice to such an extent that Defendants' classification decision is wholly intermingled with counsel's advice.  And it is self-evident that Defendants decided to interpose Defendants' several good faith and non-willfulness affirmative defenses based on Defendants' decision-making process which included, as Richardson explained, strong reliance upon counsel's views and advice.  Secondly, under 29 U.S.C. § 260, Defendants have the burden to establish the good faith affirmative defenses as pleaded

in Defendants' Answer which raises the question, unaddressed by Defendants, of exactly how Defendants will meet Defendants' burden of proof at trial, presumably through Richardson's testimony describing Defendants' decision-making process and others associated with the process without necessarily implicating counsel's communications, if not advice, with Richardson and other participants regarding Defendants good faith and lack of willful violations of the FLSA and state law. Defendants' assertion that Defendants can compartmentalize Defendants' decision-making so as to exclude from Defendants' evidence, as Defendants insist they have or will, counsel's communications, including the advice or opinions counsel undoubtedly also communicated to Richardson on the classification question, suggests a feat of mental gymnastics beyond the normal boundaries of credulity.

More specifically, for example, if Richardson testifies that Defendants acted in good faith by objectively reviewing the work of assistant managers along with their job descriptions but is not required to reveal his extensive discussions with counsel, the trier of fact will be misled in believing the decision was taken, as Defendant would have it, without consultation with counsel, which, as revealed by Richardson's deposition testimony, is false.  If, on the other hand, Richardson reveals that such decision included advice of counsel, as he will be eventually required to do having so testified at his deposition, and the advice is not disclosed, again, according to Defendants' reading of *Erie*, because Defendants choose not to affirmatively proffer counsel's advice in support of Defendants' good faith defense, the trier of fact will likely conclude that Defendants' decision was in good faith and a non-willful violation because it was consistent with counsel's advice, the actual truth of which supposition cannot be known

unless Defendants are required to reveal, through pretrial discovery, what exactly that advice was.  The Second Circuit has held that in such situations the jury was entitled to learn what defendant's counsel advised him despite the defendant's assertion that he relied only on his own judgment about the alleged fraud at issue.  *See United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir. 1991) (where defendant claimed that his belief in the legality of defendant's alleged fraudulent schemes was based on "personal" reasons rather than advice of defendant's counsel, defendant's "conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent, "thus supporting that" fairness requires examination of [the] protected communication," and constituting an implied waiver of the privilege).  *See also Scott v. Chipotle Mexican Grill, Inc.*, 2014 WL 7236907, at *6 (S.D.N.Y. Dec. 18, 2014) (in FLSA and state law action for unpaid overtime defendant's assertion of good faith affirmative defense under § 259 and § 260 without specifying reliance upon advice of counsel insufficient to avoid, through "artful pleading," implied waiver "where it was evident that Chipotle did in fact have advice of counsel for the very topic at issue."), *aff'd*, No. 112-CV-8333 (S.D.N.Y. Jan. 23, 2015) (Carter, J.); *Arista Records, LLC v. Lime Grp. LLC*, 2011 WL 1642434, at *3 (S.D.N.Y. 2011) (even if a defendant, asserting a good faith defense, claimed that defendant had ignored counsel's advice, plaintiff entitled in fairness to know truth of such assertion thereby constituting any implied waiver of the privilege).

Defendants' reliance, Defendants' Memorandum at 6-8, on caselaw to the contrary is unavailing.  Upon careful examination, these cases are distinguished from the instant matter.  For example, in *Crawford v. Coram Fire Dist.*, 2014 WL 1686203, at

\*\*4-6 (E.D.N.Y. Apr. 29, 2014) there was no evidence that defendant specifically relied upon advice of counsel as a justification for the alleged retaliation.  Similarly, in *McKeen-Chaplin v. Provident Savings Bank, FSB*, 2015 WL 502697, at \*9 (E.D.Cal. Feb. 5, 2015) defendant did not, again unlike the case at bar, allege it relied on counsel's advice in making the challenged exempt classification decision in good faith. On the other hand, in *Erie*, the Second Circuit emphasized that "the assertion of a good-faith defense involves an inquiry into state of mind, <u>which</u> <u>typically</u> <u>calls</u> <u>forth</u> the possibility of implied waiver of the attorney-client privilege." *In re County of Erie*, 546 F.3d at 228-20.  And, as noted, Discussion, *supra*, at 3, the court emphasized that "'[w]hether fairness requires disclosure has been decided  . . . on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted.'" *Id.* at 229 (quoting *In re Grand Jury*, 219 F.3d at 183).  Here, in contrast to the facts in *Erie*, Defendants have both pleaded in several affirmative defenses their good faith in classifying the assistant managers as Defendants' exempt employees in substantial reliance for "considerable components" (Doc. No. 151 at 156) on Defendants' counsel's guidance and the process by which counsel was continuously and closely involved in reviewing the relevant facts upon which Defendants' classification decision was based as well as offering advice and opinions to Defendants' key corporate decision makers based on that information. On this record, the only fair conclusion is that Defendants have relied substantially upon, and intend to continue to rely upon, counsel's communications in providing testimony at trial to support Defendants' good faith  and non-willfulness affirmative defenses, and that Defendants' attempt to argue otherwise is an exercise in unpersuasive hair-splitting and semantics.

Finally, Defendants vigorously insist that national employers like Defendants require a narrow application of the implied waiver doctrine in order to protect their ability to consult counsel regarding wage and hour related business matters.  Defendants' Memorandum at 11-13.  But it is beyond cavil that the attorney-client privilege represents an impediment to the judicial search for truth and must give way when the needs of that search require it.  Here, Defendants have claimed to have relied to a significant degree on advice of counsel as among the factors which caused Defendants to classify their assistant managers as exempt.  Why national retailers like Defendants would wish to resist allowing the trier of fact to learn fully of the role counsel's advice played in such decision is not explained by Defendants' argument opposing the requested disclosures at issue on Plaintiffs' motions, unless, of course, in fact there was no such reliance, and the counsel's advice was actually to the contrary of Defendants' affirmative defenses.  In such circumstance, to allow a defendant to establish its employee classifications represented a good faith effort to comply with the law while withholding the inconsistent fact of contrary legal advice disserves the search for truth, one of the important rationales for the implied waiver doctrine.  Contrary to Defendants' protestations, business entities like Defendants are not likely to abstain from seeking advice of counsel on such matters, given the advantages of avoidance of potential expensive litigation and a stronger ability to successfully sustain a good faith and non-willfulness defense that would accrue merely because seeking and complying with counsel's advice may also carry the risk of its disclosure in subsequent litigation.  The court therefore concludes that as a result of applying the implied waiver doctrine to the facts of this case that "employers would be encouraged to make uninformed decisions

without the benefit of a comprehensive and honest legal analysis," as Defendants claim,

Defendants' Memorandum at 12, is a theory without substance.

## CONCLUSION

Based on the foregoing, Plaintiffs' motions, Doc. No. 148 and 153, are

GRANTED.  The time limit pursuant to Fed.R.Civ.P. 72(a) within which to file objections,

if any, is hereby enlarged to include the period covered by the stay of proceedings

previously requested by the parties and granted by the court.  *See* Order Doc. No. 178.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated:  June 22, 2015
        Buffalo, New York