UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JEFFREY HEITZENRATER, et al.,

                          Plaintiffs,

        v.

                                                    12-CV-900S

OFFICEMAX, INC., et al.,

                          Defendants.

**FINAL ORDER AND JUDGMENT APPROVING SETTLEMENT AGREEMENT PURSUANT TO THE FAIR LABOR STANDARDS ACT, AND AWARD OF ATTORNEYS' FEES AND COSTS, SERVICE AWARDS, AND PAYMENT TO SETTLEMENT ADMINISTRATOR**

**I.      INTRODUCTION**

        Presently pending before this Court is Plaintiffs' unopposed motion seeking final approval of the parties' settlement.  (Docket No. 197.)  For the following reasons, the motion is granted and the proposed settlement is approved.

**II.     BACKGROUND**

        On September 21, 2012, Plaintiff Jeffrey Heitzenrater (later joined by four other named plaintiffs, Geronimo Padilla, Timothy Hawk, Vallie Masias, and Mark Genovesi) commenced this action under the Fair Labor Standards Act (29 U.S.C. § 201 et seq. ("FLSA")) and New York Labor Law ("NYLL") alleging that Defendants failed to pay him and similarly situated assistant store managers ("ASMs") overtime wages for hours worked in excess of 40 per week as required by law.  (Docket Nos. 1, 131.)  On February 2, 2014, this Court granted Plaintiffs' motion for conditional certification of this lawsuit as a FLSA collective action and to facilitate notice of the same under 29 U.S.C. § 216(b), and a notice was issued to individuals who had worked for Defendants as

1

ASMs during the relevant period.  (Docket Nos. 82, 83.)  Following issuance of notice, over 300 individuals opted into the suit, ultimately resulting in a conditional class of 338 ASMs.  (Docket No. 199 at ¶¶ 8, 22.)   After mediation with a private mediator, the parties sought preliminary approval for a settlement.  (Docket No. 194.)  On November 23, 2015, this Court issued an order giving preliminary approval and providing for notice.  (Docket No. 195.)  Of the 338 individuals who opted in on the suit, 337 returned a release form and none objected to the settlement.  (Docket No. 199 at ¶ 26.)

Plaintiffs now seek final approval of the proposed settlement (Docket No. 197), and both parties appeared before this Court for a Fairness Hearing as to the terms of that settlement on May 18, 2016.  Counsel advised that no written objections to the settlement had been received and no one appeared at the Fairness Hearing to voice an objection or otherwise be heard to contest the settlement.  As such, this Court proceeded directly to a colloquy with counsel concerning the relevant factors that must be considered in determining whether to approve the settlement.  See Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (discussing relevant factors).  For the most part, the substance of that discussion is set forth below.  The full text of that discussion is, however, incorporated herein by reference.  (Docket No. 201.)

The relevant terms of the proposed settlement include a payment by the Defendants in the amount of $3,530,000.00 (the "Settlement Amount"), and agreement as to certain deductions from that amount:  (1) payment of $1,176,666.67 in attorneys' fees and $173,578.22 in costs to class counsel; (2) payment of a $9,500.00 service award to the first named plaintiff, Heitzenrater, and $7,000.00 service awards to each of the additional named plaintiffs, Padilla, Hawk, Masias, and Genovesi; and (3) payment

of $33,000.00 to Rust Consulting, which shall be responsible for administering the terms of the Settlement Agreement.  (Docket No. 194-1 (the "Settlement Agreement").)  The Settlement Amount, less the payments noted above, and less Defendants' share of all federal and state payroll taxes, will then be distributed by Rust Consulting to participating settlement collective members based upon the number of weeks that each worked as an ASM during the relevant period as compared with the number of weeks worked by all other eligible settlement collective members.  (Id.)

## III.    FAIRNESS OF THE PROPOSED SETTLEMENT

Before approving a FLSA settlement, a district court "must scrutinize the settlement agreement to determine that the settlement is fair and reasonable." Wolinsky, 900 F. Supp. 2d at 335; see also Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015).  However, "[t]he standard for approval of a FLSA settlement is lower than for a Rule 23 settlement because a FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement."  Hens v. Clientlogic Operating Corp., No. 05-CV-381S, 2010 WL 5490833, at *2 (W.D.N.Y. Dec. 21, 2010) (citing Khait v. Whirlpool Corp., No. 06-6381 (ALC), 2010 WL 2025106, at *6 (E.D.N.Y. Jan. 20, 2010)).

A.  Total Settlement Amount

In making a fairness assessment as to the total settlement amount, the court should consider the totality of the circumstances, including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

3

Wolinsky, 900 F. Supp. 2d at 335 (internal quotation marks and citations omitted).  "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve a bona fide dispute" and "reflect[ ] a reasonable compromise over contested issues."  Hens, 2010 WL 5490833, at *2 (internal citation omitted).  The proposed settlement here resolves contested litigation that has been pending for more than three years and has involved significant, contentious discovery and motion practice.  And, as described further below, the proposed settlement is the product of lengthy, vigorous arm's length negotiations between experienced counsel. This Court finds that the proposed settlement is the resolution of a bona fide dispute.

Further, the proposed settlement is in accord with the Wolinsky factors.  First, according to the calculations of Plaintiffs' counsel, the proposed settlement is high compared to the possible range of recovery.  (Docket No. 199 at ¶¶ 27, 30.)  The average gross settlement amount is more than $10,400 per individual, which is higher or in a comparable range to settlements in recent similar cases.  See Stallard v. Fifth Third Bank, No. 2:12-cv-01092 (MRH) (W.D. Pa. 2015) ($3.25 million settlement for 541 plaintiffs, average gross settlement of $6,000); Whittington v. Taco Bell of Am., Inc., No. 10-CV-01884-KMT-MEH, 2013 WL 6022972 (D. Colo. Nov. 13, 2013) ($2.49 million settlement for 476 plaintiffs, average gross settlement of $5,000); McKee v. PetSmart, Inc., 1:12-cv-01117-SLR-SRF (D. Del. July 27, 2015) ($3.8 million settlement for 332 plaintiffs, average gross settlement of $11,300).  The reaction from conditional class members to the settlement has been very positive.  (Docket No. 199 at ¶ 24.)  Indeed, none of the conditional class members have objected or sought exclusion from the proposed settlement.  (Id. at ¶ 26.)

Second, the proposed settlement would allow the parties to avoid the costs associated with continued litigation.  Prior to reaching the proposed settlement, the parties had been preparing to undertake significant travel and expense for depositions, (id. at ¶ 16), and the parties anticipated a complicated trial with extensive testimony and complex legal and factual matters that would require substantial time and expense (id. at ¶ 17).   Beyond establishing claims and defenses at trial, proceeding with litigation would require further discovery and motion practice and, even if there had been a successful trial, any decision would likely have been appealed.  (Id.)

Third, the proposed settlement provides certainty whereas continued litigation would carry significant risks.  If litigation were to continue, Plaintiffs acknowledge that they will need to establish how many hours the average employee worked, how many weeks per year the average employee worked those hours, whether the employees can recover a third year of damages under the FLSA (a question of willfulness), and whether the employees can obtain liquidated damages under the FLSA (a question of good faith).  (Id. at ¶ 41.)  As such, Plaintiffs would face risks in establishing the full amount of liability and damages alleged at trial, which can lead to unpredictable results.   In addition, Plaintiffs faced the risk of final certification (and possible decertification) of the conditionally certified collective action.

Fourth, the parties reached the settlement as a result of arm's-length negotiations following broad discovery.  They are represented by experienced counsel who negotiated zealously on behalf of their clients.  The proposed settlement was reached with the assistance of a private mediator experienced in wage and hour disputes.  (Id. at ¶ 16.)  By the time that the parties began mediation, counsel was

sufficiently informed as to the facts of the case to enable them to evaluate the merits of their claims and defenses.  (Id.)

Fifth, there is no evidence of fraud or collusion between the parties.  Instead, as the procedural history reflects and as counsel have argued, this has been a hard-fought litigation where the proposed settlement is the product of a contested mediation with an experienced mediator.

In sum, having considered the Wolinsky factors and the totality of the circumstances, the Court finds the proposed settlement amount to be fair and reasonable.

B. Attorneys' Fees and Expenses

Plaintiffs also request an award of $1,176,666.67 in attorneys' fees and $173,578.22 in costs to class counsel, for a total cost and fee award of $1,350,244.89. Under the FLSA, a prevailing plaintiff is entitled to reasonable attorneys' fees and expenses.  29 U.S.C. § 216(b).  While "[a]ttorney's fees in an FLSA settlement are subject to court approval" for reasonableness, Falleson v. Paul T. Freund Corp., 736 F. Supp. 2d 673, 674 (W.D.N.Y. 2010), there is a "greater range of reasonableness" where, as here, "the parties [have] settled on the fee through negotiation."  Misiewicz v. D'Onofrio Gen. Contractors Corp., No. 08CV4377(KAM)(CLP), 2010 WL 2545439, at *5 (E.D.N.Y. May 17, 2010), report and recommendation adopted, No. 08-CV-4377 KAM CLP, 2010 WL 2545472 (E.D.N.Y. June 18, 2010).

In evaluating an attorney's fee request, a court must consider:  (1) counsel's time and labor; (2) the case's magnitude and complexities; (3) the risk of continued litigation; (4) the quality of representation; (5) the fee's relation to the settlement; and (6) public

policy considerations. See Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000). In addition to considering the Goldberger factors, a court may use one of two methods to calculate attorney's fees: the "lodestar" method or the "percentage of the fund" method. See, e.g., McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010).

Having reviewed these factors, the Court finds an award of $1,176,666.67 for attorneys' fees to be reasonable. Counsel expended significant but reasonable time and labor on this matter (Docket No. 199 at ¶¶ 43-45); the litigation of this type of FLSA wage and hour case is legally and factually complicated (see Ling Nan Zheng v. Liberty Apparel Co. Inc., 617 F.3d 182, 185 (2d Cir. 2010) ("FLSA claims typically involve complex mixed questions of fact and law. . . ." (quoting Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728, 743, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981))); as noted above, continued litigation involves substantial risk (see also Docket No. 199 at ¶ 41); the parties are represented by counsel with significant experience in this type of litigation (id. at 33, 34, 49); the amount of the fee is not inconsistent with the size of the settlement (Stefaniak v. HSBC Bank USA, N.A., No. 1:05-CV-720 S, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of settlement amount as fees); and public policy considerations support approving this negotiated fee (see Misiewicz, 2010 WL 2545439, at *5 ("[T]he Court is reticent to disapprove a settlement on the amount of attorney's fees, since both parties assumingly have knowledge of how attorney's fees are calculated in this district and were negotiating at arm's length.")).

Further, under either the percentage of fund or lodestar method, the amount sought is reasonable. Plaintiffs' counsel seeks 33 1/3% of the Settlement Amount in

fees, plus additional costs.  "This fee arrangement is routinely approved by courts in this Circuit."  <u>Rangel v. 639 Grand St. Meat & Produce Corp.</u>, No. 13 CV 3234 LB, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (approving proposed FLSA settlement where attorneys sought one-third of the settlement amount, plus costs); <u>Davis v. J.P. Morgan Chase & Co.</u>, 827 F. Supp. 2d 172, 186 (W.D.N.Y. 2011) (same).  "The lodestar method of apportioning attorneys' fees involves multiplying the hours reasonably billed to the case by the appropriate hourly rate, and then, in the court's discretion, applying a multiplier to compensate the attorneys for factors such as the underlying risk and complexity of the litigation."  <u>Hicks v. Stanley</u>, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *8 (S.D.N.Y. Oct. 24, 2005).  Plaintiffs' counsel represents that the amount sought comes to below the lodestar total (Docket No. 199 ¶ 37 ("the requested fee represents a negative multiplier (0.57%)"), which falls well within the range of reasonable fees as assessed in this circuit.  <u>Johnson v. Brennan</u>, No. 10 CIV. 4712 CM, 2011 WL 4357376, at *20 (S.D.N.Y. Sept. 16, 2011) ("Courts regularly award lodestar multipliers from two to six times lodestar.").

Accordingly, the attorneys' fees and costs are approved.

C. <u>Service Awards</u>

Plaintiffs also seek approval of a $9,500.00 service award to named plaintiff Heitzenrater and $7,000.00 service awards to each of the other named plaintiffs, Padilla, Hawk, Masias, and Genovesi.  Plaintiffs maintain that these awards are reasonable given the named Plaintiffs' contributions that resulted in the prosecution and resolution of this case, including assisting in factual investigation, responding to written discovery, producing documents, aiding preparation for mediation, and participating in

depositions.  (Docket No. 199 ¶¶ 50-52.)

This Court finds these awards to be "within the range of reasonableness recognized by courts in this Circuit in employment-related cases." See Hens, 2010 WL 5490833, at *2 (W.D.N.Y. Dec. 21, 2010)  (finding $7,500 award to representative plaintiffs "in recognition of his or her efforts in obtaining the benefits of the settlement for the [opt-in plaintiffs]") (citing Stefaniak, 2008 WL 7630102, at *11 (finding $5,000 award to each representative plaintiff in wage and hour collective/class action to be reasonable); Spann v. AOL Time Warner, Inc., No. 02 CIV. 8238DLC, 2005 WL 1330937, at *9 (S.D.N.Y. June 7, 2005) (finding $10,000 incentive award for each named plaintiff in ERISA class action to be appropriate)).

D. Payment to the Settlement Administrator

Finally, Plaintiffs seek approval for payment of $33,000.00 to Rust Consulting as compensation for their role as settlement administrators.  Plaintiffs' counsel represents this amount is "reasonable and typical of notice and administration costs for handling a settlement of this size."  (Docket No. 199 ¶¶ 50-52.)  This Court finds no basis to disagree with that assessment, and the fees are therefore approved.

IV.   CONCLUSION

Accordingly, for the reasons discussed above and those stated on the record at the Fairness Hearing, this Court finds that the terms of the proposed settlement are fair, reasonable and in the best interests of Plaintiffs and the class.  Consequently, the motion for final approval is granted and the settlement is approved.

V.   ORDERS

IT IS HEREBY ORDERED AND ADJUDGED, that based upon the Court's review

of Plaintiffs' Memorandum of Law in Support of Plaintiffs' Unopposed Motion, the Settlement Agreement submitted to this Court at Docket No. 194-1, and all other papers submitted in connection with Plaintiffs' Motion, as well as the oral arguments presented at the May 18, 2016 Fairness Hearing, and given that all persons who have opted into this Action who have not heretofore had their claims dismissed ("FLSA Collective Members") have had a full and fair opportunity to be heard, and upon all proceedings had in this Action heretofore, this Court hereby APPROVES the settlement set forth in the Settlement Agreement ("Settlement") and GRANTS Plaintiffs' Unopposed Motion (Docket No. 197).

FURTHER, that this Court finds that the Notice of the Settlement ("Notice") described in the Settlement Agreement ("Settlement"), which Notice was provided to FLSA Collective Members as directed by the Court by its November 23, 2015 Order, was the best notice practicable under the circumstances and complied with the requirements of due process.

FURTHER, that this Court concludes that the Settlement reflects an adequate, fair, and reasonable resolution of a bona fide dispute and is in the public interest, and is hereby APPROVED pursuant to 29 U.S.C. § 216(b).

FURTHER, that this Court finds that the Settlement is for the exclusive benefit of the individuals who returned a Release in accordance with the Notice and who did not request to be excluded from the Settlement ("Participating Settlement Collective Members").

FURTHER, that this Court APPROVES payment by or on behalf of OfficeMax Incorporated and OfficeMax North America, Inc. ("Defendants"), in the amount of

$3,530,000.00 ("Settlement Amount").

FURTHER, that this Court APPROVES payment of Attorneys' Fees in the amount of $1,176,666.67 and Costs in the amount of $173,578.22, to Class Counsel, Klafter Olsen & Lesser LLP and Shavitz Law Group, P.A., from the Settlement Amount and pursuant to the terms of the Settlement Agreement.

FURTHER, that this Court APPROVES payment of Service Awards in the amounts of $9,500 to the Named Plaintiff, Jeffrey Heitzenrater, and in the amount of $7,000 to each of the additional Named Plaintiffs from the Settlement Amount and pursuant to the terms of the Settlement Agreement.

FURTHER, that Rust Consulting shall be responsible for administering the terms of the Settlement Agreement and handling all other work incidental to administering the Settlement, and this Court APPROVES payment of $33,000 out of the Settlement Amount for such services.

FURTHER, that the Settlement Amount less the payments set forth above, and less Defendants' share of all federal and state payroll taxes, shall be distributed by the Settlement Administrator to Participating Settlement Collective Members promptly after this Judgment becomes final in accordance with the formula and other terms set forth in the Settlement Agreement.

FURTHER, that the Action is DISMISSED WITH PREJUDICE with respect to the Named Plaintiffs and all other FLSA Collective Members, without costs to any Party, other than as specified in this Order.

FURTHER, that in consideration of Defendants' payment of the Settlement Amount, and for other good and valuable consideration, the Named Plaintiffs and all

FLSA Collective Members irrevocably and unconditionally forever and fully release and covenant not to sue Defendants – and all of their past, present, and future parents, subsidiaries, companies, divisions, and affiliates, and other current or former related entities thereof, and all of the past, present, and future officers, directors, employees, agents, members, insurers, legal counsel, and successors and assigns of said entities, as well as all of their predecessors, successors, and all persons acting by, through, under or in concert with any of them – from all claims asserted in this Civil Action, as well as any and all past and present matters, claims, demand, and causes of action for unpaid regular and overtime wages, penalties, liquidated damages, costs, attorneys' fees, and any other relief under the FLSA, 29 U.S.C. 201, et seq., New York Labor Law, and the Illinois Minimum Wage Law and Wage Payment and Collection Act, as well as any other federal, state or local law claims, both past and present, known and unknown, relating to alleged unpaid regular or overtime or minimum wages, meal or rest periods, or any claim derived from the failure to pay such wages, which accrued prior to July 6, 2014 (the "Released Claims").

FURTHER, that this Judgment is the Final Judgment in this Civil Action as to all of the Released Claims set forth above.

FURTHER, that without affecting the finality of this Judgment in any way, this Court retains jurisdiction over (a) implementation of the Settlement; (b) distribution of the Settlement Amount as provided for herein; and (c) any other proceedings related to the implementation, interpretation, administration, consummation, and enforcement of the terms of the Settlement, and the administration of the Settlement by Rust Consulting. The time to appeal from this Judgment shall commence upon its entry.

FURTHER, that in the event that the Settlement does not become final, this Judgment shall be rendered null and void and shall be vacated, *nunc pro tunc*, and without prejudice to the *status quo ante* rights of the FLSA Collective Members and Defendants.

FURTHER, that this Court finds that there is no just reason for delay and expressly directs the immediate entry of this Judgment by the Clerk of the Court, and the Clerk of Court is directed to close this case.


SO ORDERED.

Dated:  May 27, 2016
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge